# CITY OF LOUISVILLE, KENTUCKY, v. CUMBER-LAND TELEPHONE AND TELEGRAPH COM-PANY.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF KENTUCKY.

No. 197.   Argued March 7, 8, 1912.—Decided May 13, 1912.

Under the then constitution of Kentucky, in 1886, the legislature had the sole right to create corporations and grant franchises to use the streets of municipalities; a charter granted by the State, subject to conditions to be imposed by the municipality, became, after the acceptance of the conditions, a grant, not of the municipality but of the State, and one which cannot be impaired by an ordinance made by the municipality.

The new constitution of 1891, conferring upon municipalities the right to grant street franchises, and the later statute repealing special corporate privileges, did not and could not, repeal rights vested in corporations nor relieve them of the burdens imposed by prior charter contract.

The constitution of Kentucky of 1891, while limiting the power to sell franchises in the future, distinctly protected previously granted charter rights under which work had in good faith been begun.

While franchises to be are not transferable without express authority, franchises to have and to hold and to use are contractual and proprietary and can be transferred; and, *held* in this case, that the franchise granted to a telephone company was property, taxable and alienable under the conditions on which it was granted, and, under the contract clause of the Constitution, could not be abrogated as against a transferee whose rights had been recognized by the municipality.

Permitting the transferee of a franchise to act thereunder and expend large sums of money and exacting from it a bond to comply with the conditions of the franchise will operate to estop a municipality from denying that the franchise was transferable and the transferee had succeeded to all the rights of the transferring corporation.

Where the State, and not a municipality, has granted an assignable right in perpetuity to use the streets of that municipality, the grant

is not affected by the status of the city being changed so to give it
the greater rights than when the grant was made.

In construing the duration of a telephone franchise, the nature of the
system to be operated must be considered as well as the facts that
the necessary structures are permanent in nature and require large
investments, and that revocation of the franchise at will would
operate to nullify it and defeat the purpose of the State to procure
the system desired; and so *held* that the legislative grant made prior
to the adoption of its present constitution by the State of Kentucky
to a telephone company to use the streets of Louisville was one in
perpetuity, was assignable and could not be revoked by a subsequent
ordinance of the city of Louisville as against the assignee of the
original corporation.

On April 3, 1886 (Laws 1885–6, c. 511, p. 1174), the
legislature of Kentucky chartered the Ohio Valley Tele-
phone Company, fixing no limit to its corporate existence.
Its principal office was to be at Louisville, but the com-
pany was empowered to construct and maintain within the
State and elsewhere telephone lines, exchanges and sys-
tems, and authorized "to purchase or to acquire and dis-
pose of real estate, apparatus, patents, licenses, rights and
franchises relating to such business; to borrow money, and
to issue and sell bonds and to secure the payment of the
same by a mortgage on all the property of the company,
and on any of its . . . franchises, easements, rights
of way and privileges . . ." In § 5 it was enacted
that "The said company may construct, equip and main-
tain said telephone systems and exchanges, erect poles and
string wires thereon, and operate its telephone lines over,
along or under any highway, street or alley in the city of
Louisville, with and by the consent of the General Council
of said city." On August 17, 1886, the city council passed
an ordinance which, after reciting this section of the char-
ter, ordained that the act of the legislature above men-
tioned, so far as it refers to the use of the streets of Louis-
ville, "is hereby ratified and confirmed and the right is
hereby granted and confirmed to the said Ohio Valley

Telephone Company, its successors and assigns, to maintain. a telephone system, and to erect poles and string wires thereon; . .. . and to operate its telephone lines over, along or under any street, avenue, alley or sidewalk in the city of Louisville." There were also provisions in this ordinance regulating the manner of erecting poles and stringing wires in the street, and requiring the company to carry the fire and police wires of the city free of charge, and to give a bond in the sum of $50,000, with surety, to save the city harmless against any damage caused by the opening of any street for telephone purposes. This bond was to be renewed from time to time as required by the city. It was declared that nothing in the ordinance should be construed to give the Ohio Valley Telephone Company, its successors or assigns, any exclusive right in the streets.

The ordinance was accepted, the $50,000 bond was given, and the Ohio Valley Telephone Company erected poles, strung wires, and maintained a telephone exchange in the city of Louisville until January 27, 1900, when it consolidated with the Cumberland Telephone and Telegraph Company. By virtue of the Kentucky statute then of force, a new corporation was created under the name of the Cumberland Telephone and Telegraph Company, and the defendant in error was thereafter vested with all the "property . . . of the constituent companies, without deed or transfer, and bound for their debts and liabilities." The statute, at that time, was silent as to the transfer of "franchises," but in 1902 (Ky. Stat. 1909, § 556) it was amended so as to provide that upon the filing of the certificate the consolidated company should be vested "with all the rights, privileges, franchises, exemptions, property, business, credits, assets and effects of the constituent corporations."

Upon this consolidation on January 27, 1900, the Cumberland Telephone and Telegraph Company entered into

possession of all the property of the Ohio Valley Telephone Company and operated the plant, poles and wires in Louisville until April 7, 1902, when the city council passed an ordinance, that the Cumberland Company should execute a bond for $50,000, as required of the Ohio Valley Telephone Company under the ordinance of August 17, 1886. This was done, and, on June 2, 1902, the council passed a resolution that "the bond of the Cumberland Telephone and Telegraph Company, successor of the Ohio Valley Telephone Company, principal, and the American Bonding Company, of Baltimore city, as surety, be and the same is hereby accepted and approved, and the Ohio Valley Telephone Company, and its sureties, are hereby relieved from all liability under their bond of August 28, 1886."

The Cumberland Company fully complied with the agreement as to carrying the police and fire wires of the city free of charge, greatly enlarged the telephone system in the city, and, at an expense of more than a million dollars, improved the plant and trebled the number of subscribers, although there was in the city another telephone company with a large number of patrons.

In 1908 a difference arose between the city and the company, the city claiming that the company's methods were dictatorial and oppressive, that it rendered poor service at high rates and was guilty of discrimination among its patrons. This the company denied, claiming that its service was good, its rates were low and that what was called discrimination consisted in different rates for different classes of service open on equal terms to all members of the public alike.

No proceedings of any sort were instituted to decide the merits of this controversy, or to secure appropriate relief if, after a hearing, the charges were found to be true. But, apparently with the view of having only one telephone system, an ordinance was submitted to the City Council

of Louisville in 1908 providing for the creation of a comprehensive telephone system, repealing all existing rights and granting a new franchise, which was to be sold to the highest bidder.

The Cumberland Company gave notice that it would rely on its existing contract to use the streets, and would not be a bidder at the proposed sale. Thereupon this ordinance was withdrawn, and another introduced and passed, by which the city, on January 23, 1909, repealed the ordinance of August 17, 1886, under which the Ohio Valley Telephone Company had erected poles, strung wires, and conducted a telephone system.

The Cumberland Company thereupon filed its bill in the United States Circuit Court for the Western District of Kentucky, setting out the facts above outlined, alleging that it was the successor to the Ohio Valley Telephone Company, which, in reliance upon the ordinance of August 17, 1886, had erected a telephone system; that the Cumberland Company, as its successor under the terms of the consolidation act, and in accordance with the contract between the city and the Ohio Valley Telephone Company, carried on the telephone business and does now carry upon its poles and underground conduits the fire alarm and police wires of the city free of charge, which wires have been and now are daily used by the city in the conduct of its police and fire departments; that the Cumberland Company has largely extended and improved the plant, appliances and business, and in doing so has expended $1,700,000, "all of which was done upon the faith of and in reliance upon the said ordinance." It alleged that the repealing ordinance of 1909 impaired the obligation of its contract and deprived the company of its business and property without due process of law, and that, unless enjoined, the city would remove the poles and wires, and destroy the company's business, to its irreparable damage.

A temporary injunction was granted, and the city's demurrer to the bill for want of equity was overruled. The case was referred to a Master to take testimony as to the extent of the discrimination and other matters as to which the city made complaint. On consideration of his report the court said: "We find nothing in the answer of the defendant nor in the large mass of testimony heard on the issues made by the pleadings which should in any way change the views expressed in passing on the demurrer and the motion for a temporary injunction." He thereupon entered a final decree making the injunction permanent. The city appealed, alleging generally that the court erred in overruling the demurrer and in granting the injunction. It specifically alleges that the court erred in holding (1) that the charter granted to the Ohio Valley Telephone Company the right, with the consent of the city, to operate a telephone system which could not be repealed by the city council; (2) that the ordinance of August 17, 1886, constituted a valid and binding contract between the city and the company, which could not be repealed by the council; (3) that upon the consolidation of the Ohio Valley Telephone Company with the Cumberland Telephone and Telegraph Company all the rights of the former under its charter and the ordinance passed to and are now owned by and vested in the Cumberland Telephone and Telegraph Company; and (4) that the ordinance of January 23, 1909, repealing that of August 17, 1886, was void and of no effect.

*Mr. Clayton B. Blakey* and *Mr. Huston Quin,* with whom *Mr. Joseph S. Lawton* was on the brief, for appellant:

Power to grant a franchise does not exist in a city unless expressly conferred. Nellis on Street Railways, § 23; *Louisville Railway Co.* v. *Louisville,* 8 Bush, 415; *East Tennessee Tel. Co.* v. *Russellville,* 106 Kentucky, 669; *Henderson* v. *Covington,* 14 Bush, 312.

While a valid franchise authorizing a telephone company to occupy the streets of a city entitles such telephone company to an absolute and exclusive appropriation of that space in the streets which is occupied by its telephone poles, *St. Louis* v. *West. Un. Tel. Co.*, 148 U. S. 97, where a telephone company acquires from the State authority to use the streets of a city by and with the consent of the city, its franchise to use such streets is acquired from the State.

Under such conditions the grant from the municipality is a mere revocable license. Booth on Street Railways, § 10; Nellis on Street Railways, § 20; *Water Co.* v. *Boise City*, 123 Fed. Rep. 232; *Detroit Citizens' R. Co.* v. *Detroit Ry. Co.*, 171 U. S. 48; *S. C.*, 110 Michigan, 384; *Detroit* v. *City Railway Co.*, 56 Fed. Rep. 867; *Wabash Railroad Co.* v. *Defiance*, 167 U. S. 88; *East Ohio Gas Co.* v. *Akron*, 90 N. E. Rep. (Ohio) 40; *Blair* v. *Chicago*, 201 U. S. 400; *Home Telephone Co.* v. *Los Angeles*, 211 U. S. 273; *Chicago Ry. Co.* v. *People*, 73 Illinois, 541, 547; *People* v. *Chicago Tel. Co.*, 220 Illinois, 338; *Parkhurst* v. *Salem*, 32 Pac. Rep. (Oregon) 304; *Gas Co.* v. *Parkersburg*, 30 W. Va. 435; *New Haven Co.* v. *Hamersley*, 104 U. S. 1.

A franchise granted by a city silent as to the length of time during which it may be exercised is not a perpetual franchise to occupy the streets unless the city had express authority to grant a perpetual franchise. Cases *supra* and *Linden* v. *LaRue*, 23 How. 435; *Charles River Bridge*, 11 Pet. 419; *Fanning* v. *Gregaire*, 16 How. 528; *Wright* v. *Nagel*, 101 U. S. 791; *Buffalo & J. R. R. Co.* v. *Faulkner*, 103 U. S. 821; *Los Angeles* v. *Water Co.*, 177 U. S. 571; *Mills* v. *St. Clair County*, 8 How. 569.

A grant of a franchise irrevocable and permanent in its nature made by a city without express authority from the legislature to make such grant is void. *Milhau* v. *Sharp*, 27 N. Y. 611; *West End &c. Co.* v. *Atlantic &c. Co.*, 49 Georgia, 151, 155; *New York* v. *Mayor*, 3

Duer, 119; *Blaschko* v. *Wurster*, 156 N. Y. 432; *Ampt.* v. *Cincinnati*, 21 O. Cir. Ct. 300; *Birmingham* v. *St. R. Co.*, 79 Alabama, 465, 473; *Westminster Water Co.* v. *City* (Md., 1904), 56 Atl. Rep. 990; *Central Transportation Co.* v. *Pullman P. C. Co.*, 139 U. S. 24, 60.

A void act of a municipal body will not be validated by the adoption of a new state constitution. *East Tennessee Tel. Co.* v. *Russellville*, 106 Kentucky, 673.

When two corporations consolidate a new corporation comes into existence which is *eo instanti* granted by the State only such portion of the rights and privileges of the constituent corporations as the State at the time had the power to grant. Kentucky Statutes, § 566; *Shields* v. *Ohio*, 95 U. S. 319; *Ferguson* v. *Meredith*, 2 Wall. 25; *Atlantic & Gulf R. R. Co.* v. *Georgia*, 98 U. S. 359; *Maine C. R. Co.* v. *Maine*, 96 U. S. 499; *Keokuk & W. R. Co.* v. *Missouri*, 152 U. S. 301; *Pennsylvania College Cases*, 13 Wall. 190; *Yazoo & M. V. R. Co.* v. *Adams*, 180 U. S. 1; *Wright* v. *Georgia Railroad Co.*, 216 U. S. 422; *Shaw* v. *Covington*, 194 U. S. 596.

All charters, franchises and special privileges granted by the Kentucky legislature subsequent to 1856 are subject to revocation. *Louisville Water Co.* v. *Clark*, 143 U. S. 1; *Covington* v. *Kentucky*, 173 U. S. 331.

All franchises and special privileges granted by the State of Kentucky prior to the adoption of the present constitution and which were revocable remain subject to revocation. Kentucky Constitution, § 3.

Before appellee came into existence the legislature of Kentucky revoked the grant which it had made to the Ohio Valley Telephone Company. Kentucky Statutes, § 573.

The legislature is powerless to revoke any franchise or right which the appellee may have acquired to use the streets of the city of Louisville. Kentucky Constitution, §§ 59 and 60.

The State of Kentucky has delegated to the city of Louisville authority to revoke any franchise which the appellee may have acquired to occupy the streets of the city of Louisville. Kentucky Constitution, §§ 156, 163, 164, 199; Kentucky Statutes, §§ 2742, 2783, 2825.

The legislature had authority to delegate to the city the right to revoke any franchise which the appellee may have acquired to use the streets of the city of Louisville. *City Railway Co.* v. *Sioux City*, 138 U. S. 98; *Mo. Pac. R. R. Co.* v. *Kansas*, 216 U. S. 262.

All special privileges or grants made to corporations prior to the adoption of the present constitution and inconsistent with the provisions of that constitution and the laws made pursuant thereto are now repealed. *Hager* v. *Kentucky Title Co.*, 119 Kentucky, 50; *Pearce* v. *Mason County*, 99 Kentucky, 357; *McTigue* v. *Commonwealth*, 99 Kentucky, 72.

Where a city gives its consent for a telephone company to use its streets without limit as to time the right of such telephone company to continue to use the streets expires when the charter of the city expires. *Blair* v. *Chicago*, 201 U. S. 485; *People* v. *Chicago Tel. Co.*, 220 Illinois, 238; *Parsons* v. *Breed*, 126 Kentucky, 765; *Louisville* v. *Vreeland*, 140 Kentucky, 404.

A city cannot convert a license into a contract by calling it a contract. *St. Louis* v. *West. Un. Tel. Co.*, 148 U. S. 97; *Wabash R. R. Co.* v. *Defiance*, 167 U. S. 88.

A city may revoke a grant or a license without notice to the grantee and without assigning reasons therefor. *Calder* v. *Michigan*, 218 U. S. 598; *United States* v. *Des Moines Nav. & R. Co.*, 142 U. S. 510.

Discrimination among its patrons gives a city ample cause for revoking the franchise of the telephone company. Wyman on Public Service Corp., chaps. 27, 28; *Delaware & S. Tel. Co.* v. *Kelly*, 160 Fed. Rep. 517; *Missouri* v. *Bell Tel. Co.*, 23 Fed Rep. 541; *Rudd* v. *New York*, 143

U. S. 517; *L. & N.* v. *Central Stock Yard*, 97 S. W. Rep.
778.

Mr. *William L. Granbery* and Mr. *Alexander Pope
Humphrey*, with whom Mr. *Alexander Pope Humphrey, Jr.*,
was on the brief, for appellee.

MR. JUSTICE LAMAR, after making the foregoing state-
ment, delivered the opinion of the court.

1. Under the present constitution of Kentucky street
franchises cannot be granted for longer than twenty years
and then only to the highest bidder, after public advertise-
ment by the city authorities.  But in 1886, when the Ohio
Valley Telephone Company was chartered, the legislature
not only had the sole right to create corporations and to
grant franchises but, without municipal consent, it could
have authorized the company to use any and all streets
in the city of Louisville.  Instead, however, of exercising
this plenary power, the charter declared that the company
might maintain its telephone system, erect poles and
string wires over the streets and highways of the city,
with and by the consent of the General Council.  These
provisions of the charter gave the municipality ample
authority to deal with the subject, and by virtue of this
statutory power it could have imposed terms, which the
company might have been unable or unwilling to accept—
in which event the franchise granted by the State would
have been nugatory.  But, when the assent was given the
condition precedent had been performed, the franchise
was perfected and could not thereafter be abrogated by
municipal action.  For, while the city was given the au-
thority to consent, the statute did not confer upon it the
power to withdraw that consent, and no attempt was made
to reserve such a right in the collateral contract contained
in those provisions of the ordinance relating to the com-

pany's giving a bond and carrying the police and fire wires free of charge. If those or other terms of this independent and separate contract had been broken by the Ohio Valley Company or its successors, the city would have had its cause of action. But the municipality could not by an ordinance impair that contract nor revoke the rights conferred. Those charter franchises had become fully operative when the city's consent was given, and thereafter the company occupied the streets and conducted its business, not under a license from the city of Louisville, but by virtue of a grant from the State of Kentucky. Such franchises granted by the legislature could not, of course, be repealed, nullified or forfeited by any ordinance of a General Council.

2. In 1891 a new constitution was adopted by the State of Kentucky conferring upon municipalities the right to grant street franchises, and later, under the reserve power, a statute was passed repealing all special corporate privileges. It is claimed that in consequence of these laws the street rights granted the Ohio Valley Telephone Company have been withdrawn, or at least made subject to municipal revocation. But we find in the cited sections of the constitution (156, 163, 164 and 199) and the statutes (§§ 573, 2742, 2783 and 2825) nothing which sustains this contention, which, if correct, would lead to the conclusion that all structures theretofore lawfully placed in city streets by water, light, telephone, railway and other public utility companies became nuisances, and as such were removable after September, 1898, to the damage of the community at large and the destruction of property of immense value dedicated to public purposes. The general repeal of all special privileges, referred to in the statute, related to exclusive grants, tax exemptions, monopolies and similar immunities (Ky. Stat. 573; *Covington* v. *Kentucky*, 173 U. S. 231), and not to those corporate powers and property rights needed

and conferred in order to enable the company to perform
the duties for which it had been organized. For, while
this charter conferred privileges, it also created obligations
in favor of the public, and no attempt was made by the
general law to repeal the rights which had vested, nor to re-
lieve the company of the burden which had been imposed.

3. The provisions of the constitution and statutes re-
lied on as revoking licenses from municipalities or as con-
ferring power upon cities to repeal grants are in the
main prospective and do not in any event support the
claim that the General Council can destroy the rights
granted the Ohio Valley Telephone Company, whether
they be treated as having been acquired under the charter
of April 3, 1886, or under the ordinance of August 17,
1886. On the contrary, the constitution of 1891, while
limiting for the future the power to sell street franchises,
distinctly protected the interests of those public utility
companies "whose charters have been heretofore granted,
conferring such rights, and work has in good faith been
begun thereunder." Inasmuch, therefore, as the charter
of the Ohio Valley Telephone Company was granted and
as the exchanges were in operation before the adoption of
the constitution, that company's rights are expressly pre-
served by the organic law of the State.

4. The Ohio Valley Company, thus owning the right
to use the streets for telephone purposes, was consolidated
on January 27, 1900, into the Cumberland Telephone and
Telegraph Company, the defendant in error, and the
latter claims that, as successor, it acquired and now holds
these privileges. This is denied by the city on the ground
that while the statute, then of force, provided for the
transfer of the "property" of the constituent companies,
it was not until the amendment of 1902 that provision
was made by which their "franchises" could pass to the
consolidated company.

It is not necessary to determine whether that amendment

was intended to supply an omission, remove a doubt or to ratify the transfer and use under this and prior mergers. *City Railway Co.* v. *Citizens' Railroad Co.*, 166 U. S. 557, 569. For while franchises to be are not transferable without express authority, there are other franchises to have, to hold and to use, which are contractual and proprietary in their nature and which confer rights and privileges, which can be sold wherever the company, as here, has power to dispose of its property. In the present case the Ohio Valley Company was by its charter given authority to mortgage and dispose of franchises. Among those thus held was the right to use the streets in the city for the purpose necessary in conducting a telephone business. Such a street franchise has been called by various names—an incorporeal hereditament, an interest in land, an easement, a right of way—but, howsoever designated, it is property. *Detroit* v. *Detroit Street Ry.*, 184 U. S. 368, 394; *Louisville City Ry.* v. *Louisville*, 71 Kentucky (8 Bush), 534; *West River Bridge* v. *Dix*, 6 How. 507, 534; *Board of Morristown* v. *East Tenn. Tel. Co.*, 115 Fed. Rep. 304, 307. Being property, it was taxable, alienable and transferable, and, as property, passed to the Cumberland Telephone and Telegraph Company under the express provisions of the Kentucky statute, which, as of force in 1900, declared that the consolidated company should be "vested with all the property, business, assets and effects of the constituent companies, without deed or transfer, and bound for all their contracts and liabilities."

That the street rights, however designated, passed to the Cumberland Company is the natural and obvious construction of the act. The plant and property of a telephone company are useless when dissevered from the streets, and there would, in effect, have been no property out of which to pay the debts or with which to perform the public duties imposed if the street rights of the constituent companies had not been transferred by the

statute to the consolidated company. The constitution (§§ 199 and 200), in providing for the incorporation and consolidation of telephone companies, evidently contemplated, as did the statute, that on this statutory union there should be a transfer of that franchise, right of way or property, which alone gave value to the plant, thereby preserving the investment which had been made, for purposes of private gain and public use. The city itself so construed the general law, and thereupon demanded from the Cumberland Company, as successor of the Ohio Valley Company, the bond for $50,000 called for in the ordinance of August 17, 1886. The company, in pursuance of the collateral contract contained in the ordinance, and of the requirements of the consolidation statute, carried the police and fire wires of the city free of charge. With the knowledge and acquiescence of the city, and in reliance on the statutory conveyance of the street rights, the Cumberland Company, at an expense of more than a million dollars, erected many new poles, laid additional conduits and strung miles of wire in extending and improving the telephone system. This action of the council could not enlarge the charter grant, but did operate to estop the city (*Boone County* v. *Burlington & M. R. R.*, 139 U. S. 684, 693) from claiming that the ordinance was inoperative and it also prevented the Council from denying that the Cumberland Company had succeeded to every right and obligation of the Ohio Valley Company.

5. The plaintiff in error makes the further contention that its general demurrer should have been sustained and the bill dismissed because the original grant of street rights, having been indefinite as to time, was either void *ab initio*, or revocable at the will of the General Council, or that it expired in 1893 when (Ky. Stat., 1909, § 2742) Louisville was made a city of the first class with new and enlarged power. In support of this proposition numerous

decisions are cited, in some of which it appeared that a State had chartered a public utility corporation, but the city by ordinance had given an exclusive or perpetual grant of a street franchise which was held to be void because made in excess of the statutory power possessed by the municipality. In others the company had been incorporated for thirty years, and the street right was held to have been granted only for that limited period. In others it was decided that such privileges terminated with the corporate existence of the municipality through whose streets the rails and tracks were to be laid. *Detroit Citizens' Street Railway* v. *Detroit Railway*, 171 U. S. 48, 54; *St. Clair County Turnpike Co.* v. *Illinois*, 96 U. S. 63; *Blair* v. *Chicago*, 201 U. S. 400; 3 Dill., Mun. Corp., §§ 1265–1269.

None of these decisions are applicable to a case like the present, where the Ohio Valley Telephone Company, with a perpetual charter, has received, not from the municipality, but from the State of Kentucky, the grant of an assignable right to use the streets of a city which remains the same legal entity, although by a later statute it has been put in the first class and given greater municipal powers. *Vilas* v. *Manila*, 220 U. S. 345, 361.

In considering the duration of such a franchise it is necessary to consider that a telephone system cannot be operated without the use of poles, conduits, wires and fixtures. These structures are permanent in their nature and require a large investment for their erection and construction. To say that the right to maintain these appliances was only a license, which could be revoked at will, would operate to nullify the charter itself, and thus defeat the State's purpose to secure a telephone system for public use. For, manifestly, no one would have been willing to incur the heavy expense of installing these necessary and costly fixures if they were removable at will of the city and the utility and value of the entire plant

be thereby destroyed. Such a construction of the charter cannot be supported, either from a practical or technical standpoint.

This grant was not at will, nor for years, nor for the life of the city. Neither was it made terminable upon the happening of a future event, but it was a necessary and integral part of the other franchises conferred upon the company, all of which were perpetual and none of which could be exercised without this essential right to use the streets. The duration of the public business in which these permanent structures were to be used, the express provision that franchises could be mortgaged and sold, the nature of the grant, and the terms of the charter as a whole, compel a holding that the State of Kentucky conferred upon the Ohio Valley Telephone Company the right to use the streets to the extent and for the period necessary to enable the company to perform the perpetual obligation to maintain and conduct a telephone system in the city of Louisville. Such has been the uniform holding of courts construing similar grants to like corporations. *Milhau* v. *Sharp*, 27 N. Y. 611 (1863); *Hudson Telephone Co.* v. *Jersey City*, 49 N. J. L. 303; *Mobile* v. *L. & N. R. R.*, 84 Alabama, 122; *Seattle* v. *Columbia & P. S. R. R.*, 6 Washington, 379, 392; *People* v. *Deehan*, 153 N. Y. 528. The earlier cases are reviewed in *Detroit St. R. R.* v. *Detroit*, 64 Fed. Rep. 628, 634, which was cited with approval in *Detroit* v. *Detroit St. R. R.*, 184 U. S. 368, 395, this court there saying that "Where the grant to a corporation of a franchise to construct and operate its road is not, by its terms, limited and revocable, the grant is in fee."

The right to conduct a telephone exchange and to use the streets of the city of Louisville, which had been vested by law in the Cumberland Telephone & Telegraph Company, could not be impaired or forfeited by an ordinance of the General Council; nor had it expired by lapse of

time or under any provision of law when the bill was filed. The Circuit Court properly made the injunction permanent, and its decree is

*Affirmed.*