STATE EX REL CINCINNATI & S. BELL TEL. CO. v. NORWOOD (CITY) ET AL.

1. **Contracts with Utility Companies for Laying Conduits Which may be Terminated or Modified.**
    An ordinance granting the right to a telephone company to construct and maintain underground conduits in the streets, avenues and public ways of a municipality, but imposing conditions of so meager and indefinite a character as to necessarily imply that the real conditions are vested in the discretion to be exercised by the director of public service, and which ordinance had not been accepted by the company or acted under by it, is subject to revocation, and the revoking ordinance under consideration in the present case is held valid.

2. **Rights under Municipal Grant not Determinable in Mandamus.**
    A controversy between a municipality and a telephone company as to the right of the latter to be granted a permit to lay conduits in certain streets can not be determined in a mandamus proceeding.

*Miller Outcalt, J. W. Heintzman* and *Frank Cook,* for plaintiff.

*S. A. Headley,* for defendants.

## JONES (O. B.), J.

The relator in this case, a telephone company under the laws of Ohio, seeks by writ of mandamus to compel the director of public service of the city of Norwood and the city of Norwood to issue a permit to it to construct and maintain underground conduits, with the necessary manholes and laterals for same, in five certain avenues in the city of Norwood.

The right is granted to a telephone company regularly organized in Ohio to use the highways of the state by provisions of law found in Sec. 9170 to 9198 G. C., but it is provided by Sec. 9170 that the construction of such line "shall not incommode the public in the use thereof," and by Sec. 9197 and 9198, that consent of the city or village must be obtained therefor, and in the construction and maintenance of underground wires and pipes or conduits and other fixtures that consent shall be given by council. These sections indicate sufficient official control to

State, ex rel, v. Norwood.

prevent the public from being incommoded by these utilities in the use of public highways.

In a municipality the council and the director of public service have the care, management and control of the streets and the highways. Sections 3714, 4240, 4324, 4325 and 4326 G. C. And the municipal authorities have power to determine on the mode of use.

In *Queen City Tel. Co. v. Cincinnati,* 73 Ohio St. 64, 81 [76 N. E. 392], it is determined that where wires are to be laid underground, "that the consent of the city is thus made an essential condition." No terms are fixed by the statute as to the mode and manner of the use of the streets, but it is left to the determination of the municipal authorities. It was clearly not the intention of the Legislature to confer a *carte blanche* to such companies to use as much or as little of the public streets or highways as they might see fit, and it was evidently intended to confer upon the municipality sufficient authority to deal with the subject and to impose proper terms upon the company in granting its consent. *Columbus Citizens Tel. Co. v. Columbus,* 88 Ohio St. 466, 468, 469 [104 N. E. 534].

Council of the city of Norwood on December 18, 1913, passed an ordinance authorizing the relator telephone company to construct and maintain underground conduits in the streets, avenues and public ways of said city, one of the conditions of the ordinance being that:

"No streets, avenues, alleys or public ways shall be disturbed for the purpose of constructing conduits until said telephone company shall secure a written permit from the service director of the city of Norwood."

The ordinance fails to specify what streets or public ways are to be used; whether the wires and conduits are to be placed in thoroughfares or in back streets and alleys; whether all public ways are to be used, or those to be selected by the company or those to be selected by the city authorities; how many conduits are to be laid in any street; what size, form, or what material, or what manner of construction is to be used; how much and what portion of the street is to be occupied; how deep they are to be laid and what provision is to be made to prevent interfer-

ence with sewers, water pipes, gas pipes and house connections for same. The only conditions provided by the ordinance are:

1. The one quoted above, that the company must secure a written permit from the director of public service.

2. That the conduits shall be of sufficient depth and strength to permanently maintain the surface of the streets without breaking, and constructed under the supervision and to the satisfaction of the city engineer, and that the street or public way shall be restored to "its former state of usefulness" and the city saved harmless from damages caused to persons or property.

3. A reservation of sufficient space in each subway for wires for the fire and police departments of the city.

4. The giving of a bond of $2,000 to secure faithful performance of the provisions of the ordinance.

All the other provisions and conditions for the protection of the city of Norwood must evidently have been intended to be covered by the written permit which the ordinance requires must be first secured from the service director before any street or public way should be disturbed for the purpose of constructing such conduits. This necessarily confides to this important officer, who is made by law the chief administrative officer of the city, a high degree of official discretion to be exercised by him in determining what conditions shall be imposed upon the issuance of this permit. It can hardly be claimed that the service director is a mere automaton vested with no official discretion, and that he is compelled to issue a blanket permit to open any street or avenue at any place for the purpose of constructing conduits of any kind or description that the telephone company may be pleased to request.

The defendants in their answer, however, deny that the ordinance was ever accepted by the telephone company, and allege that it was repealed by an ordinance passed February 16, 1914, and as no time was fixed in the ordinance for the duration of the grant and nothing had been done by the telephone company under the terms of said grant, the city was within its legal rights in the repeal of said ordinance.

It appears from the evidence that the telephone company on

State, ex rel, v. Norwood..

December 31, 1913, deposited with the clerk of the council of the city of Norwood a bond in the sum of $2,000 guaranteeing that it would faithfully comply with the provisions of said ordinance. No written acceptance, unless said bond can be considered such, was filed with the city, and no action is shown to have been taken by the city council looking to the approval of said bond or showing that it had in any way been brought to the attention of the council. It also appears that between December 18, 1913, and January 15, 1913, certain plans and blueprints were prepared at the instance of relator, a copy of which was attached to the application made by said company to the director of public service for permission to construct conduits in certain parts of Wayland avenue, Regent avenue, Hudson avenue, Elsmere avenue and Floral avenue, and which application was dated February 18, 1914. It appears that these plans were actually prepared before the ordinance became effective, and there is no evidence to show that the preparations of these plans had in any way been brought to the attention of any of the municipal authorities of said city of Norwood prior to the date of said application. On February 16, 1914, the council of the city of Norwood duly passed an ordinance repealing its former granting ordinance No. 2585 which had been passed December 18, 1913, and under which the relator claims to have secured vested rights for the construction of said conduits. The application for permit was made February 18, 1914.

Under this state of facts it therefore becomes a question whether a contract or franchise had been created between the parties, which had become irrevocable without mutual consent. It is undoubtedly essential, to create such a grant, that an acceptance must be had on the part of the grantee. This is usually evidenced by a formal written acceptance filed with the granting authority, but such written instrument is not absolutely necessary, but the acceptance may be evidenced by the acts of the parties.

When a franchise has been created by a grant duly accepted, it can not be revoked merely at the will of the grantor. *Louisville* v. *Cumberland Telephone Co.*, 224 U. S., 649 [32 S. Ct. 572; 56 L. Ed. 934]; *Grand Trunk Western Ry.* v. *South Bend*, 227

U. S. 544 [33 S. Ct. 303; 57 L. Ed. 633]; *Owensboro* v. *Cumberland Telephone Co.*, 230 U. S. 58 [33 S. Ct. 988; 57 L. Ed. 1389]; *Russell* v. *Sebastian*, 233 U. S., 195 [34 S. Ct. 517; 58 L. Ed. 912].

In each of these cases it appears that there was no question of acceptance, operation and large expenditures of money under the grant.

But if no formal acceptance has been had, and no steps have been taken amounting to an acceptance by the acts of the parties, and no money has been expended under said grant, it would appear that by proper action the granting authority might withdraw its proposed grant and change the terms and conditions thereof, or revoke it entirely.

*New York Electric Lines Co., In re*, 201 N. Y., 321 [94 N. E. 1056], the following language is used in the opinion of the court, page 331:

"The question thus arises as to whether a bare acceptance of the permit granted by the resolution of the common council amounted to an irrevocable franchise granted by the city. Clearly in the absence of partial performance under the permit, by which some vested interest in property is acquired, the state does not become bound by such permit."

And on page 334:

"Should a public service corporation be permitted to acquire an irrevocable franchise by mere acceptance without spending a dollar by way of performance, and then hold up the public in its enjoyment of the privileges contemplated by the grant indefinitely, or until they can be bartered away for a fortune? Should the municipalities to whom the Legislature has delegated the right to grant permits for the use of their streets for public service purposes be denied the power to revoke licenses granted in case of failure of the grantee to render substantial performance? We think not. No reasons for the deprival of the municipalities of such power are suggested and none are apparent to our minds. We, therefore, incline to the view expressed by the trial court that the mere granting of a permit by a city to a corporation to use the streets for a purpose, is a license merely, revocable at the pleasure of the city, unless it has been accepted and some substantial part of the work performed contemplated by the permission sufficient to create a right of property and thus form a consideration for the contract."

This case has been reviewed by the Supreme Court of United States, where the judgment of the New York Court of Appeals was affirmed, and will be published in *New York Elec. Lines* v. *Empire City Subway Co.*, 235 U. S., 179 [35 S. Ct. 72; 59 L. Ed. 184].

The principle laid down in the case of *East Ohio Gas Co.* v. *Akron,* 81 Ohio St. 33 [90 N. E. 40; 26 L. R. A. (N. S.) 92n; 18 Ann Cas. 332]:

"Where the contract between a municipal corporation and an incorporated company is silent as to the duration of the franchise, such franchise is not perpetual but the duration thereof is simply indeterminate, existing only so long as the parties mutually agree thereto,"

would further support the right of the municipality to repeal a granting ordinance before any acts, operations or expenditures had been had thereunder by the grantee.

In the case at bar, considering the meager and indefinite character of the conditions imposed by the granting ordinance, which necessarily imply that the real conditions are vested in the discretion to be exercised by the service director in granting the permits thereunder, it can not be claimed that anything had been done which would cause this so-called franchise to become irrevocable by the city, and in the opinion of the court the action of the city council in passing the revoking ordinance must be held to be valid.

Even if the court should be wrong in its conclusion in the matter of the effect of the revocation ordinance, it would still be a question as to whether relator has established in this case the right to the writ of mandamus sought herein. The writ is defined by Sec. 12283 G. C. *et seq.* It can only issue in a case where there is a clear right and an absolute obligation and where there is no adequate remedy in the ordinary course of law. The office of a writ of mandamus has been very fully considered and carefully analyzed in the opinion of Shauck, J., in the case of *Fraternal Mystic Circle* v. *State,* 61 Ohio St. 628 [48 N. E. 940; 76 Am. St. 446].

In the case of *State* v. *Smith,* 71 Ohio St. 13, a writ of mandamus was refused against a county auditor where the right to

require him to do the thing sought was not clear and the duty was not one specifically enjoined upon him by law.

In *Mt. Vernon* v. *State,* 71 Ohio St. 428 [73 N. E. 515; 104 Am. St. 783], the third proposition of the syllabus states:

"A controversy between the parties to a contract as to their respective rights under the contract can not be determined in proceedings in mandamus."

*State* v. *Moore,* 42 Ohio St. 103:

"If judgment or discretion must be used by an officer, his exercise of them in the absence of fraud, bad faith or abuse of discretion will not be controlled or directed by mandamus."

A clear right to the issuance of the permit not having been shown, and the director of service being undoubtedly vested with official discretion in regard to same, the writ of mandamus prayed for must be refused.

SWING and JONES (E. H.), JJ., concur.

---

## BILLS OF EXCEPTIONS