Allen, J.
 

 Throughout the course of this opinion the Ohio Public Service Company will be called the respondent, and the defendant in error will be called the relator.
 

 The relator contended in the Court of Appeals that the respondent had been granted no franchise rights, or that, if such rights had been acquired, they had been forfeited by abandonment and nonuser. These allegations were denied by the respondent. Since the court refused to give the judgment of ouster either upon the ground that no franchise had been given, or upon the ground of abandonment and nonuser, it is evident that the Court of Appeals must have found against the relator upon 'these questions of fact. There is evidence ini the record to sustain the conclusion of the Court of Appeals upon these questions, and we therefore shall not discuss them, but shall pass directly to the main point of law involved in the case.
 

 The relator contends that the respondent is using the streets of Orrville for commercial lighting purposes without the authority of the state or the village. Respondent on the other hand claims that
 
 *330
 
 the organization of the Orrville Light, Heat
 
 &
 
 Power Company in 1893 constituted a grant from the state of Ohio to G-ans & Wilson and their associates to operate and maintain a lighting system for the village of Orrville. and the inhabitants thereof, and that this grant from the state, taken together with the ordinance of February 1, 1892, created and fixed rights, which the village, as a subsidiary of the state, had no power to destroy.
 

 The respondent further claims that these rights were vested, not only in the Orrville Light, Heat & Power Company, but also in its assignees and successors ini interest. Moreover, the respondent claims that the assignment by the Orrville Light, Heat & Power Company to Rennicker, in 1907, transferred, not only the rights granted by the state to the Orrville Light, Heat & Power Company in 1893, but also the rights granted by the council of the village of Orrville to Gans & Wilson in 1892.
 

 It is to be emphasized that this case is not one in which the occupation of the village streets by the original grantee from the state is questioned. In this case the assignee of a successor in interest of the original grantee seeks to continue to occupy the streets of the village for commercial lighting purposes. Also the occupation of the village streets is not questioned by the village, but by the state itself, in an action in
 
 quo warranto.
 

 The respondent concedes in his answer, briefs, and argument that the ordinance of 1892 constituted a special franchise, and bases his entire contention upon that premise. The question of the nature of the grant secured from the state by the Orrville
 
 *331
 
 Light, Heat & Power Company in its charter of incorporation was practically not discussed in argument, hut we shall examine it somewhat in detail.
 

 The statutes ini force governing this situation in 1893, at the time when the franchise ordinance was obtained from the village by Grans & Wilson, were comprised in Section 3454, Revised Statutes, now Section 9170, General Code, the statute found in 83 Ohio Laws, 143, and Section 3471a, Revised Statutes, now Section 9192, General Code. Read together, these sections bestowed upon electric lighting companies the same general right possessed by telegraph and telephone companies, so far as applicable, to erect their equipment within the public highways, provided the same should not incommode the public in the use of the roads. These sections read as follows:
 

 Section 9170:
 

 “A magnetic telegraph company may construct telegraph lines, from point to point, along and upon any public road by the erection of the necessary fixtures, including posts, piers and abutments necessary for the wires; but shall not incommode the public in the use thereof.”
 

 Section 9192:
 

 “Excepting sections ninety-one hundred and seventy-eight and ninety-one hundred and seventy-nine, so far as applicable, the provisions of this chapter shall apply to companies organized for the purpose of supplying public and private buildings, manufacturing establishments, streets, alleys, lanes, lands, squares and public places with electric light and power, or an automatic package carrier. Save what are given by such excepted sections,
 
 *332
 
 every such company shall have the powers and be subject to the restrictions herein prescribed for magnetic telegraph companies.”
 

 At this time the statute enacted in 83 Ohio Laws, 143, was in force. It had not been expressly repealed by the enactment of Revised Statutes, Section 3471a (Section 9192, General Code), and it may be questioned whether it was repealed by implication in that enactment inasmuch as in that statute the laws as to telegraph companies were made to apply to' companies furnishing electricity “so far as the same may be applicable.” This statute, 83 Ohio Laws, 143, authorized electric companies to construct lines for conducting electricity for power and lighting purposes through alleys, etc., “with the consent of the municipal authorities of the city, village or town, and under such reasonable regulations as they may prescribe. ’ ’
 

 These sections were construed in the case of
 
 Hardin-Wyandot Lighting Co.
 
 v.
 
 Village of Upper Sandusky,
 
 93 Ohio St., 428, 113 N. E., 402, which held that:
 

 “The Act of January 26, 1887 (84 Ohio Laws, 7), made applicable to electric light and power companies the provisions of the chapter relating to magnetic telegraph companies-, so far as practicable, and while said act remained in force the power of such companies to occupy the streets of a municipality was derived from the state. ’ ’
 

 The syllabus did not state that the statute of 83 Ohio Laws, 143, was repealed by implication, and in the judgment o-f the writer of this opinion such was not the effect of the enactment of Section 919*2, General Code, with its proviso that the pro
 
 *333
 
 visions of the chapter should apply to electric light and power companies “so far as applicable.”
 

 However that may be, the above sections did not confer upon the Orrville Light, Heat & Power Company any specially designated rights in the streets of the city of Orrville. Hence those rights if given must have been conferred either in the charter of incorporation or in the ordinance of 1892.
 

 It is mot of great moment to decide whether the respondent is correct in claiming that the ordinance of 1892 constituted a special franchise to use the streets of the village. In either case, whether the right in question was derived from the state or the village, it was not under the circumstances set forth in this record assignable. If it was a state right, it could not at the time of the attempted assignment to Bennicker in 1907 be transferred without the consent of the state. If it was a special franchise from the village, it could not after 1896 be exercised by an assignee without the consent of the village. The record does not show that the Orrville Light, Heat & Power Company was by its charter given authority to dispose of its franchise or of its property essential to the performance of its public duties, and no such statutory authority existed prior to 1896; that is, before the time of the amendment of 1896 no specific authority had been given by the state to the Orrville Light, Heat & Power Company to make the assignment of 1907 to Bennicker.
 

 In the year 1896 Section 3471a, Bevised Statutes, was amended (92 Ohio Laws 205), and the amendment specifically prohibited electric companies from exercising in a municipality rights granted them
 
 *334
 
 under Section 3454, Revised Statutes (Section 9170, General Code), without the consent of the municipality.
 

 The amendment of 1896 reads in part as follows:
 

 “In order to subject the same to municipal control alone, no person or company shall place, string, construct or maintain any line, wire fixture or appliance of any kind for conducting electricity for lighting, heating or power purposes through any street, alley, lane, square, place or land of any city, village or town, without the consent of such municipality; and this inhibition shall extend to all levels above and below the surface of any such public ways, grounds or places, as well as along the surface thereof; but this inhibition shall not be applicable to any rights which Have heretofore been received and exercised through proceedings of any probate court.”
 

 This amendment took effect prior to the expiration of the 10-year period established in Section 4 of the ordinance of 1892, and prior to any transfer by the Orrville Light, Heat & Power Company of its rights in the village streets, whether secured from the state or from the village.
 

 In this statute the Legislature revoked whatever right had been given to public utilities in general under Sections 3454 and 3471a, Revised Statutes, to maintain their equipment in streets in a municipality without the consent thereof, and, as under the Constitution the Legislature was authorized to revoke such rights theretofore granted, the revocation became effectual upon the effective date of the amendment. This revocation was not retroactive and did not affect state grants theretofore given,
 
 *335
 
 including that secured by the Orrville Light, Heat
 
 &
 
 Power Company in 1893.
 

 However, the rights the Orrville Light, Heat & Power Company had secured as a
 
 quasi
 
 public corporation under its charter of incorporation!, under Section 3454, Revised (Statutes, and under Section 3471a, Revised Statutes, could not be assigned without the consent of the state. 12 Ruling Case Law, pp. 217 and 218, Section 43;
 
 Brunswick Gaslight Co.
 
 v.
 
 United Gas, Fuel & Light Co.,
 
 85 Me., 532, 27 A., 525, 35 Am. St. Rep., 385, 403, note, and cases cited; Joyce on Franchises, Section 462; 47 L. R. A., 87, note;
 
 Penna. Rd. Co.
 
 v.
 
 St. Louis, Alton & Terre Haute Rd. Co.,
 
 118 U. S., 290, 6 S. Ct., 1094, 30 L. Ed., 83;
 
 Chicago Gaslight & Coke Co.
 
 v.
 
 People’s Gaslight & Coke Co.,
 
 121 Ill., 530, 13 N. E., 169, 2 Am. St. Rep., 124;
 
 Central Transportation Co.
 
 v.
 
 Pullman’s Palace-Car Co.,
 
 139 U. S., 24, 11 S. Ct., 478, 35 L. Ed., 55;
 
 Branch
 
 v.
 
 Jesup,
 
 106 U. S., 468, 1 S. Ct., 495, 27 L. Ed., 279;
 
 Wright
 
 v.
 
 Milwaukee Elec. Ry. & Light Co.,
 
 95 Wis., 29, 69 N. W., 791, 36 L. R. A., 47, 60 Am. St. Rep., 74;
 
 Roper
 
 v.
 
 McWhorter,
 
 77 Va., 214;
 
 State
 
 v.
 
 Morgan,
 
 28 La. Ann., 482;
 
 Wood
 
 v.
 
 Truckee Turnpike Co.,
 
 24 Cal., 474.
 

 The respondent argues that a property right was involved in this case, and that, although the Orr-ville Light, Heat & Power Company could mot legally transfer its corporate franchise, it could legally transfer its rights in what it calls the special franchise contract of 1892 with the village, because a property right is transferable. But even in the case of tangible property a transfer by
 
 quasi
 
 public corporations of property essential to the exercise
 
 *336
 
 of franchises is ineffectual without the consent of the state. The rule is well settled that property which is essential for the performance of the duties which the .corporation owes to the public, or which, as some cases put it, is necessary for the exercise of its franchises, cannot be alienated, either voluntarily or by a forced sale, without legislative authority. Joyce on Franchises, Section 462;
 
 Coe
 
 v.
 
 Columbus, P. & I. Rd. Co.,
 
 10 Ohio St., 372, 75 Am. Dec., 518;
 
 Black
 
 v.
 
 Delaware & Raritan Canal Co.,
 
 22 N. J., Eq., 130, 399;
 
 Abbott, Adm’x.,
 
 v.
 
 Johnstown, G. & K. H. Rd. Co.,
 
 80 N. Y., 27, 36 Am. Rep., 572;
 
 Louisville Water Co.
 
 v.
 
 Hamilton,
 
 81 Ky., 517;
 
 Susquehanna Canal Co.
 
 v.
 
 Bonham,
 
 9 Watts & S., (Pa.), 27, 42 Am. Dec., 315;
 
 Youngman
 
 v.
 
 Elmira & Williamsport Rd. Co., 65
 
 Pa., 278;
 
 Ammant
 
 v.
 
 New Alexandria & Pittsburgh Turnpike Road,
 
 13 Serg. & R., (Pa.), 210, 15 Am. Dec., 593;
 
 Central Transportation Co.
 
 v.
 
 Pullman’s Palace-Car Co.,
 
 139 U. S., 24, 11 S. Ct., 478, 35 L. Ed., 55;
 
 Richardson
 
 v.
 
 Sibley,
 
 93 Mass. (11 Allen), 65, 87 Am. Dec., 700;
 
 Bd. of Commrs. of Tippecanoe Co.
 
 v.
 
 Lafayette, Muncie & Bloomington Rd.,
 
 50 Ind., 85;
 
 Oregon Ry. & Navigation Co.
 
 v.
 
 Oregonian Ry. Co.,
 
 130 U. S., 1, 9 S. Ct., 409, 32 L. Ed., 837;
 
 Attorney General ex rel. Corporation Commissioner
 
 v.
 
 Haverhill Gaslight Co.,
 
 215 Mass., 394, 101 N. E., 1061, Ann. Cas., 1914C, 1266;
 
 Thomas
 
 v.
 
 West Jersey Rd. Co.,
 
 101 U. S., 71, 83, 25 L. Ed., 950.
 

 Whether we consider the rights secured by the Orrville Light, Heat & Power Company, therefore, to be a state franchise, or, as claimed by respondent, to be a property right arising from a fran
 
 *337
 
 chise granted by the municipality, these rights were not assignable in 1907 without the consent of the state.
 

 In the cases cited by respondent, such as
 
 City of Louisville
 
 v.
 
 Cumberland Telephone & Telegrap
 
 h
 
 Co.,
 
 224 U. S., 649, 32 S. Ct., 572, 56 L. Ed., 934, and
 
 Trust Co.
 
 v.
 
 City of Cincinnati,
 
 10 O. Fed. Dec., 112, 116, the consent of the state to the assignment in question had either been given in the charter or there was no distinct statutory limitation of such right of assignment. In this case such a distinct limitation of the right of a corporation to assign its franchises and property necessary to the performance of its public duties existed in the amendment of 1896. The rights acquired by the Orrville Light, Heat & Power Company from the state in 1893, under Sections 3454 and 3471a, Revised Statutes, could not be annulled or revoked by the village of Orrville, nor by ¡the state of Ohio, after the passage of the amendment of 1896. But the powers thus acquired from the state could not be transferred without the consent of the state, and the property necessary to exercise such powers could not be transferred without the consent of the state.
 

 Wa,s such consent given? It was not given in the charter of incorporation; it was not given in statute; and, furthermore, in the amendment of 1896 the Legislature ^expressly limited the right of assignment by providing that the streets of a village after that time could not be occupied by electric companies without the consent of the municipality. This amendment took effect prior to the attempted assignment to Rennicker in 1907,
 
 *338
 
 and hence Rennicker and his successors in operating the business were operating without the authority of the state of Ohio.
 

 In other words, in the amendment of 1896 the state, so far from consenting to the assignment of the right to erect and maintain electric equipment in the streets of Orrville, limited the right of such assignment, because it conditioned such maintenance thereafter upon the consent of the municipality. Hence the assignment of 1907 was not effectual to transfer to Rennicker the right to operate in the village of Orrville. Moreover, since electric companies, after 1896, were prohibited by the state from operating in municipalities without their consent, after that date the assignee of the Orrville Light, Heat
 
 &
 
 Power Company, which operated without the consent of the village, was operating without the authority of the state of Ohio.
 

 This holding is not in conflict with the decision in the case of
 
 Hardin-Wyandot Lighting Co.
 
 v.
 
 Village of Upper Sandusky,
 
 93 Ohio St., 428, 113 N. E., 402, affirmed in the Supreme Court of the United States, 251 U. S., 173, 40 S. Ct., 104, 64 L. Ed., 210, for the reason that the question of the assignability of the franchise was not raised in that case, 'and for the further reason that in that case the village, not the state, was attacking the exercise of the franchise.
 

 The question as to whether the respondent’s predecessors in interest were acting without authority from the village in occupying the streets of Orrville for the purpose of commercial lighting did not arise for a considerable period. In 1902, at the expiration of the 10-year period established
 
 *339
 
 in the original ordinance, the village passed an ordinance by which the company contracted to, light the streets of the village for a period of 5 years, in which ordinance the village agreed to pay a set price, and fixed the price at which the company should “furnish light for full commercial purposes in said village to the citizens thereof.” This contract was executed by both parties. At the expiration of this 5-year period, in 1907, a similar ordinance was passed by the village, contracting with the company for the lighting of the streets of the village for -another period of 5 years, at a price fixed by the village. During the period between 1907 and 1912 the Orrville Light, Heat & Power Company sold its assets to one D. L. Rennicker, and the village of • Orrville later enacted another similar 5-year contract under which Rennicker furnished light for commercial lighting to the citizens of the village at a price fixed by the village. These contract ordinances, in distinction to the ordinance of February 1, 1892, given in the statement of facts, conferred no specially designated right to use the streets. Ini other words, all of the ordinances, beginning with 1902, were contract ordinances from which the power to use the streets arose by implication only and ceased with the expiration of the several ordinances. Before the expiration of the last-named 5-year period, in 1917, with the approval of the Public Utilities Commission, Rennicker sold out his interest in the lighting business to the Massillon Electric & Gas Company, which, in turn, in 1921, sold its assets and rights to the respondent, the Ohio Public Service Company.
 

 Under the amendment of 1896 (92 O. L., 204),
 
 *340
 
 no assignee of the Orrville Light, Heat & Power Company could operate in the streets of the village of Orrville without the consent of the village. This consent was given to the Orrville Light, Heat & Power Company and to its successor, Rennicker, hy the village in the contract ordinances, but was never given to the Massillon Electric & Gras 'Company. It is true that the city acquiesced in the exercise of these rights by the Massillon Electric & Gras Company until the end of the last 5-year contract, and hence cannot attack the exercise of those rights during that period; but all of these rights ceased in 1917 at the expiration of the last 5-year contract. The Massillon Electric & Gras Company succeeded only to the rights of Rennicker, and those rights expired in 1917, and the Massillon Electric
 
 &
 
 Gras Company had thereafter no right which it could transfer to the Ohio Public Service Company under the laws of the state of Ohio. Moreover, as it was the state itself which prohibited such use of the streets of municipalities after 1896, without the consent of the village', any exercise of those rights after the expiration of the last 5-year contract in 1917 was had without the consent and authority of the state, unless the passage of the franchise ordinance in February, 1892, constituted an irrevocable consent upon the part of the village.
 

 With regard to this point it is the contention of the relator that such rights as the respondent acquired against the village of Orrville from others, particularly such as may have been granted to Grans & Wilson by the ordinance of the village passed upon February 1, 1892, are indeterminate, existing only so long as the parties mutually agree,
 
 *341
 
 and that the same are terminated by an ordinance of the village passed June 18, 1923.
 

 The respondent urges that inasmuch as the ordinance passed by the village council upon February 1, 1892, granted a franchise indefinite as to time, it constituted a perpetual franchise to do the acts complained of, and could not be terminated by any act of the village.
 

 The record shows that the ordinance of February 1, 1892, creating the franchise for the erection and maintenance of electric wire mains and apparatus in the streets of the village of Orrville, Ohio, contained no express provision as to the duration of the franchise. It also contained no express provision as to the right of the company to furnish electricity for commercial and private lighting purposes through the village streets. However, after the construction of the electric light plant, electricity was actually furnished not only for public but also for commercial and private lighting purposes.
 

 In 1923 the council of the village of Orrville repealed the ordinance of 1892, ordered the respondent to remove its equipment from the streets of the village within 30 days, and notified the respondent that “all rights and privileges and franchises granted to said Guns and Wilson, their associates, successors and assigns, including the said Ohio Public IS'ervice Company, be and the same are hereby terminated and ended.”
 

 It is therefore evident that, in so far as it was within the power of the village so to do, it terminated and revoked the franchise of 1892.
 

 Was the right created by the ordinance of 1892
 
 *342
 
 an irrevocable franchise? We think not for the following reasons:
 

 (1) That it was the intention of the parties that the franchise should terminate at the end of 10 years.
 

 (2) That under the law as laid down in the case of
 
 East Ohio Gas Co.
 
 v.
 
 City of Akron,
 
 81 Ohio St., 33, 90 N. E., 40, 26 L. R. A., (N. S.), 92, 18 Ann. Cas., 332, which was followed in
 
 East Ohio Gas Co.
 
 v.
 
 City of Cleveland,
 
 106 Ohio St., 489, 140 N. E., 410, the franchise is not perpetual, but indeterminate merely, existing only so long as the parties mutually agree thereto.
 

 There are circumstances in this record which show an intention upon the part of the council in passing the ordinance of February 1, 1892, to give a mere revocable right after the expiration of 10 years. Section 4 provided that “in consideration of the construction of said electric light plant * * * the council of the said village of Orrville hereby agrees and binds itself to take and use the light of said Gans and Wilson, their associates, successors and assigns for the period of ten (10) years from and after the date upon which said light shall be first supplied.”
 

 The right to do commercial lighting is nowhere expressly granted, and arose as an incident to the right to do public lighting, as to which the village bound itself for 10 years only to take and use the light provided by Gans and Wilson. At the conclusion of the 10 years, in 1902, the village, without referring in any way to the ordinance of 1892, or to the rights and obligations thereunder, passed an ordinance by which the Orrville Light, Heat &
 
 *343
 
 Power Company, one of the predecessors in interest of the respondent herein, contracted to. light the streets of the village for a period of 5 years. This contract was fully performed by both parties. At the expiration of this contract in 1907, the village passed another ordinance by which it contracted that the same company should have the lighting of the streets of the village for another period of 5 years, and fixed the price at which the company should furnish light for commercial purposes. Another 5-year franchise ordinance of similar character, not referring to the ordinance of 1892, nor to any of the subsequent ordinances, was passed in 1912, its period to begin at the expiration of the contract of 1907, in which the price was fixed at which light for commercial lighting should be furnished to the citizens of the village. In 1917, at the expiration of the last 5-year contract referred to, the village constructed a municipal lighting plant and put the same into operation.
 

 The record does not show that the predecessors in title of the respondent questioned the action of the village in enacting the 5-year ordinances., or claimed that none of these 5-year contracts was necessary.. The use of the streets was plainly necessary for lighting the streets of the village by electricity. In view of the fact that the 10-year period was placed upon one of the specific price features of the original ordinance, and that the record fails to show that in the frequent negotiations which took place in the passage of the subsequent ordinances it was ever questioned that the village had a right to enact these contract ordinances for electric commercial lighting, fixing the
 
 *344
 
 price that should be paid therefor and placing a definite time limit upon the duration of the several contracts set forth therein, we think that the parties intended that at the expiration of the 10-year period the right to sell commercial lighting for private purposes should be subject to further contract and revocable at will. In this view of the case the phrase “to the associates and assigns of Grams & Wilson” in the ordinance of 1892 meant that Gians & Wilson could assign the contract within the 10-year period, and not after that time.
 

 This case upon the facts, then, does not run counter to the decision in the case of
 
 Northern Ohio Traction & Light Co.
 
 v.
 
 State of Ohio, ex rel. Pontius,
 
 245 U. S., 574, 38 S. Ct., 196, 62 L. Ed., 481, L. R. A., 1918E, 865, for circumstances are present herein showing an intention upon the part of the parties to give and receive a mere revocable right after the expiration of the 10-year period.
 

 This court has spoken in no uncertain terms upon the question of franchises indeterminate in duration. As laid down in the case of
 
 East Ohio Gas Co.
 
 v.
 
 City of Akron,
 
 81 Ohio St., 33, 90 N. E., 40, 26 L. R. A., (N. S.), 92, 18 Ann. Cas., 332, the rule is that “where the contract between a municipal corporation and an incorporated company is silent as to the duration of the franchise, such franchise is not perpetual but the duration thereof is simply indeterminate, existing only so long as the parties mutually agree thereto. The incorporated company may therefore voluntarily forfeit its right to exercise its privileges wiithin the municipality and wholly withdraw therefrom.”
 

 In the
 
 East Ohio Gas Company case, supra,
 
 the
 
 *345
 
 question was whether the incorporated companies might voluntarily forfeit their right to exercise their privileges under certain franchises within the municipality. Herein the municipality seeks to oust the incorporated company. There is no logical reason why the rule announced above should apply in favor of the incorporated company and not in favor of the municipal corporation, and, in fact, this court has made that precise holding in
 
 Village of Oak Harbor
 
 v.
 
 Oak Harbor Natural Gas Co.,
 
 106 Ohio St., 660, 140 N. E., 943.
 

 As we have in this case an indeterminate franchise, concerning which it is conceded that one party to the contract creating the franchise has decisively indicated its intention to' terminate its obligation thereunder, it is evident that whatever rights the respondent had in the streets of Orrville ceased when the village terminated those rights by the repealing ordinance. As the right to do private and commercial lighting was incidental to the public right, it ceased when the public right ceased, and the respondent has been exercising its rights in the street against the authority of the state and of the municipality.
 

 The respondent further contended that, inasmuch as it has been operating under recognition and approval of the Public Utilities Commission, and the Public Utilities Commission has made no order requiring it to abandon its franchise rights, it cannot be ousted under the laws of this state.
 

 "We are not impressed with the proposition that the approval and recognition of the Public Utilities Commission constitutes a judgment as to the legality of the position occupied by the respondent.
 
 *346
 
 If a corporation is doing business as a public utility within a municipality, without authority from the state and the municipality, the mere fact that it is recognized by a commission which is itself a creature of the state will not validate its existence', nor deprive this court of its constitutional jurisdiction in
 
 quo warraMo.
 

 The respondent further contends that since February 1, 1892, the council of the village has recognized the right of the respondent and its predecessors in interest, and is now estopped to deny these rights. Upon a thorough consideration of the record we think that no estoppel ha® been established here. The question of the perpetuity of the franchise was never directly raised in any prior court proceedings between the village and the respondent. Moreover, the fact that the council of Orrville repeatedly gave to the successors of the original grantees 5-year contracts for commercial lighting in which it fixed the price to be paid therefor is inconsistent with recognition upon its part that the franchise granted in the original ordinance was perpetual. Accordingly this contention also will be overruled.
 

 For the above reasons the decision of the Court of Appeal® will be affirmed.
 

 Judgment affirmed.
 

 Marshall, 0. J., Matthias, Day, Kinkade and Robinson, JJ., concur.