Bevis, J.
 

 As the parties stand here in the same positions as they stood below, they will be referred to respectively as relator and respondent.
 

 Upon the case before us three principal points are presented for decision:
 

 
 *98
 
 1. May the city of Springfield maintain an action to oust the respondent from the streets without first having applied to the Public Utilities Commission for authority to have the railway property abandoned and the railway service discontinued.
 

 2. May a state court make an order which must result in the discontinuance of the respondent company’s service while such company is engaged in the transportation of persons and property in interstate commerce?
 

 3. May the state court make an order of ouster from the streets of Springfield while the respondent company is in the hands of a receiver appointed by a federal court?
 

 1. The respondent company is a railroad as defined in Section 501, General Code.
 

 Section 504-2 General Code, provides as follows:
 

 “No railroad as defined in section 501 of the General Code, operating any railroad in the state of Ohio, * * shall abandon or be required to abandon or withdraw any main track or tracks or depot of a railroad * * * or any portion thereof, *
 
 * *
 
 or the service rendered thereby, which has once been * * * constructed, opened and used for public business, nor shall be closed for traffic or service thereon,
 
 * *
 
 * or thereover except as provided in section 504-3. Any railroad * * * violating the provisions of this section shall-forfeit and pay into the state treasury not less than one hundred ($100.00) dollars, nor more than one thousand ($1000.00) dollars, and shall be subject to all other legal and equitable remedies for the enforcement of the provisions of this act.”
 

 Section 504-3, General Code, provides as follows:
 

 “Any such railroad or any political subdivision desiring to abandon, close, or have abandoned, withdrawn or closed for traffic or service all or any part of such main track or tracks, or depot * * * shall first make application to the public utilities commission in writing who shall thereupon cause reasonable
 
 *99
 
 notice thereof to be given, stating the time and place fixed by the commission for the hearing of said application. * ”
 

 Constitutional authority for this legislation is found in Article XIII, Section 2, of the Ohio Constitution:
 

 “Corporations may be formed under general laws; but all such laws may, from time to time, be altered or repealed. Corporations may be classified and there may be conferred upon proper boards, commissions or officers, such supervisory and regulatory powers over their organization, business and issue and sale of stocks and securities, and over the business and sale of the stocks and securities of foreign corporations and joint stock companies in this state, as may be prescribed by law. Laws may be passed regulating the sale and conveyance of other personal property, whether owned by a corporation, joint stock company or individual.”
 

 Additional authority is found in the police power. In
 
 Board of County Commissioners of Franklin County
 
 v.
 
 Public Utilities Commission,
 
 107 Ohio St., 442, at page 451, 140 N. E., 87, 30 A. L. R., 429, this court, speaking of the Miller Act, of which the foregoing sections are a part, said:
 

 “The authority for this legislation rests upon the police power of the state. The police power is inherent in sovereignty. It is not brought into existence by the Legislature. All legislative action upon subjects where the police power is involved is merely a recognition of a power already existing. *
 
 * *
 
 The Miller Act did not create the right of the sovereign state to stand guard over the abandonment or withdrawal of utility service. It merely regulated the mode of its exercise. ’ ’ To the implications of the foregoing statutes the relator makes several contentions.
 

 (a) It is contended that the Miller Act was never intended to provide anything but supervision over the character and kind of service to be furnished by a
 
 *100
 
 public utility. To this contention the express language of the statutes quoted seems sufficient answer. “No railroad * * * shall
 
 * '* *
 
 be required to abandon * * * any
 
 * * *
 
 track * * * nor shall be closed for traffic or service thereon * * * except as provided in section 504-3.”
 

 (b) It is contended that Section 504-2, General Code, and Section 504-3, General Code, if given the construction placed upon them by the respondent, are in conflict with Article XVIII, Section 3, of the Constitution of Ohio:
 

 “Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
 

 In support of this contention are cited the cases of
 
 East Ohio Gas Co.
 
 v.
 
 City of Cleveland,
 
 106 Ohio St., 489, 140 N. E., 410;
 
 Ohio Public Service Co.
 
 v.
 
 State, ex rel. Fritz, Pros. Atty., 113
 
 Ohio St., 325, 149 N. E., 129;
 
 Ohio Electric Power Co.
 
 v.
 
 State, ex rel.
 
 Martin,
 
 Pros. Atty.,
 
 121 Ohio St., 235, 167 N. E., 877.
 

 In
 
 East Ohio Gas Co.
 
 v.
 
 City of Cleveland, supra,
 
 the court was confronted with the question of whether or not the company could terminate the services it had theretofore rendered under a series of franchises without first obtaining the consent of the Public Utilities Commission. All of the franchises in question were granted prior to 1919, when the Miller Act was passed, and the court held that in so far as that act purported to affect franchise contracts made prior to its enactment it was contrary to Article II, Section 28, of the Constitution of Ohio, forbidding retroactive laws and laws impairing the obligation of contracts; and contrary to Article I, Section 10, of the Constitution of the United States. In the present case there is no franchise or contract.
 
 East Ohio Gas Co.
 
 v.
 
 City of Cleveland, supra,
 
 is not in point.
 

 
 *101
 
 In neither of the other two cases relied upon are the provisions of the Miller Act considered. In both, the court simply reaffirmed its prior rulings as to the effect of an indeterminate franchise;
 
 East Ohio Gas Co.
 
 v.
 
 City of Akron,
 
 81 Ohio St., 33, 90 N. E., 40, 26 L. R. A. (N. S.), 92. Neither is an authority on the point now before us.
 

 It is asserted, however, that to require the consent of the Public Utilities Commission before the municipality may oust the respondent company from its streets is, in effect, to confer on the- Public Utilities Commission the power to grant a franchise. The contention is plausible. In our opinion, however, there is a wide distinction between the granting of a franchise for a new occupation of the streets and the refusal of permission to abandon property already dedicated to public service pursuant to a valid franchise. The dedication of property, and the establishment of service upon which the public comes to rely, bring into consideration a new and vital interest. The public is interested in the continuance of the service, and that interest the Utilities Commission is empowered to conserve. This consideration is of especial force in the case of a railway company, whose patrons include the inhabitants of many other communities besides the one which is party to the particular controversy. To permit discontinuance of the line through Springfield would entail the discomfiture of people in Cincinnati, Toledo, Columbus, and all intermediate points.
 

 It is not to be assumed that the Public Utilities Commission would arbitrarily or unreasonably refuse its consent. In any event its action is subject to review by this court. But to permit a municipality, upon whose streets the tracks and service of a railway have been lawfully established, to eject the railway company upon the expiration of its franchise, without first seeking the permission of the commission, is to leave the general public, served by such railroad, without the
 
 *102
 
 protection contemplated by the law and the constitution.
 

 (c) It is also suggested that to require the consent of the Utilities Commission before the property and service may be ordered abandoned would contravene the provisions of Article XVIII, Section 4, of the Ohio Constitution, giving municipalities the power to contract in certain particulars. In
 
 East Ohio Gas Co.
 
 v.
 
 City of Cleveland,
 
 121 Ohio St., 628, 172 N. E., 379, this precise question was before this court. The Court of Appeals had held that Sections 504-2 and 504-3, General Code, were not in contravention of Article XVIII, Section 4, of the Constitution of Ohio, as interfering with the power of municipalities to contract. This court dismissed the petition in error to the judgment of the Court of Appeals for the reason that no debatable constitutional question was involved. See
 
 City of Cleveland
 
 v.
 
 East Ohio Gas Co.,
 
 34 Ohio App., 97, 170 N. E., 586. To that ruling we adhere.
 

 Both parties in this case have discussed at length the case of
 
 Lake Shore Electric Ry. Co.
 
 v.
 
 State, ex rel. Martin, Pros. Atty.,
 
 125 Ohio St., 81, 180 N. E., 540. The syllabus in that case is as follows:
 

 “Where a city permits a public utility operating an interurban railroad, carrying an intercity traffic, to occupy its streets, without objection, for a period of five years after the termination of its original franchise, the city is not entitled to a judgment of ouster putting an end to transportation service along its streets, rendered to the people of that city and other communities of the state using such public utility, without first procuring the consent of the Public Utilities Commission of Ohio, pursuant to Sections 504-2 and 504-3, General Code.”
 

 The relator seeks to distinguish the instant case on the facts. In each case, the respondent company was operating without a franchise at the time the
 
 quo warranto
 
 proceeding was filed. In
 
 Lake Shore Electric
 
 
 *103
 

 Ry. Co.
 
 v.
 
 State, ex rel. Martin, Pros. Atty., supra,
 
 however, the operating company had once held a franchise which had expired without renewal, while in the instant case the respondent company has never had a franchise from the city of Springfield, although the road was built, and for a long time operated, under a franchise granted to a predecessor company. In the
 
 Lake Shore case,
 
 also, it is stated that the respondent company continued to operate “without objection” after the franchise expired, while in the instant case the relator strongly asserts that there is no “acquiescence” in the operation of the respondent company.
 

 Giving full weight to these factual differences, we are, nevertheless, of the opinion that the reasoning of the court in the
 
 Lake Shore case
 
 is applicable here and that no sufficient difference appears to warrant a different ruling.
 

 We are of the opinion that under the facts of this case, before an order of ouster can be made by a court of this state, application must be made to the Public Utilities Commission for authority to abandon the respondent’s property and discontinue its service.
 

 2. The claim that the state court may not order the ouster of the respondent company because it carries passengers and goods in interstate .commerce, in our opinion, is not tenable. While this railway, doubtless, carries both passengers and freight which are in transit across state lines, it is not as a unit operated in interstate commerce. Its termini and all of its lines are wholly within Ohio.
 

 Furthermore, not being operated as a part of a general steam railroad system of transportation, this electric railway is expressly excluded from the authority of the Interstate Commerce Commission.
 

 Title 49, Section 1, Paragraph 22, U. S. Code, reads as follows:
 

 “The authority of the commission conferred by paragraphs (18) to (21), both inclusive, shall not ex
 
 *104
 
 tend to the * * * abandonment * * * of street, suburban, or interurban electric railways, which are not operated as a part or parts of a general steam railroad system of transportation.”
 

 Title 49, Section 20®, Paragraph 1, U. S. Code, provides :
 

 “As used in this section the term 'carrier’ means a common carrier by railroad (except a street, suburban, or interurban electric railway which is not operated as a part of a general steam railroad system of transportation) which is subject to this chapter-, or any corporation organized for the purpose of engaging in transportation by railroad subject to this chapter.”
 

 3. May the Supreme Court issue an order of ouster to the respondent company while it is in the hands of a federal receiver? It is well settled that, pursuant to the comity which exists between the state and the federal courts, no state court will seize or undertake to exercise authority over property which is properly in the hands of a federal court, and this forbearance is reciprocated by the courts of the United States.
 

 The relator urged that the
 
 quo warranto
 
 proceedings in the state court having been begun before the receiver in the United States Court was appointed, the jurisdiction of the state court attached, to the exclusion of that of the federal court. No property, however, was actually seized or possessed by the state court or its officers, and, according to the weight of authority, the federal court may seize the property unless and until actual or constructive possession has been acquired.
 
 Empire Trust Co.
 
 v.
 
 Brooks,
 
 232 F., 641, 146 C. C. A., 567,
 
 certiorari
 
 denied;
 
 Brooks
 
 v.
 
 Empire Trust Co.,
 
 243 U. S., 655, 37 S. Ct., 480, 61 L. Ed., 948, and appeal dismissed 245 U. S., 634, 38 S. Ct., 133, 62 L. Ed., 522;
 
 Harkin
 
 v.
 
 Brundage,
 
 276 U. S., 36, 48 S. Ct., 268, 72 L. Ed., 457;
 
 Knudsen
 
 v.
 
 First Trust & Savings Bank,
 
 245 F., 81. Constructive possession is not acquired by the institution of an action in
 
 quo war
 
 
 *105
 

 ranto.
 
 1 Hughes, Federal Practice, 289;
 
 Helm
 
 v.
 
 Zarecor,
 
 222 U. S., 32, 32 S. Ct., 10, 56 L. Ed., 77. So long as the custody of the receiver continues, an order of ouster made by a state court would be a vain thing.
 

 For the foregoing reasons the judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Allen, Stephenson, Jones and Matthias, JJ., concur.
 

 Zimmerman, J., not participating.