STATE of Ohio, on the Relation of Paul T. KLAPP, Prosecuting Attorney in and for Miami County, Ohio, Plaintiff,

v.

DAYTON POWER & LIGHT COMPANY, an Ohio corporation, et al., Defendants.

Law No. 847.

United States District Court
S. D. Ohio, W. D.

Aug. 2, 1957.

On Motion for New Trial, Dec. 11, 1957.

R. K. Wilson, Director of Law, Piqua, Ohio (Successor to Bernard S. Keyt,) J. H. DeWeese, Pros. Atty., Troy, Ohio, Haveth E. Mau, Robert Houston French, Cincinnati, Ohio, for plaintiff.

Franklin L. Shipman, Troy, Ohio, Julian De Bruyn Kops, Jr., J. R. Newlin, Dayton, Ohio, for defendants.

CECIL, District Judge.

This is an action in Quo Warranto brought by the State of Ohio on the relation of Paul T. Klapp, Prosecuting Attorney of Miami County, Ohio. It was originally filed in the Court of Appeals of Miami County, Ohio. Thereafter, the Knickerbocker Trust Co., and the Irving Trust Co., both New York corporations, were made parties defendant to the action and the case was removed to this Court by reason of diversity of citizenship.

While pending in this Court the claims of the parties shifted somewhat, which resulted in a confused state of the pleadings. In order that the claims and supplemental claims which had developed be consolidated in one set of pleadings for the convenience of the Court, the parties were directed to file amended pleadings.

The amended complaint was filed in February, 1955, by James H. DeWeese, successor in office to Paul T. Klapp,

Prosecuting Attorney. The amended answers of The Dayton Power and Light Company and the Irving Trust Company were filed in December, 1955, after the trial on the merits, in June.

The amended complaint challenges the authority of The Dayton Power and Light Company as a public utility to distribute light, heat and power in the City of Piqua, Ohio, and seeks to have an order requiring the company to remove all of its poles, wires and equipment and to cease operating in the city.

The amended answer of the Irving Trust Company adopts the defenses of its co-defendant. The Dayton Power and Light Company sets up 17 defenses in its amended answer.

The case was tried and submitted to the Court on the amended pleadings, the stipulations of facts, the evidence, oral arguments and briefs of counsel.

One of the principal contentions of the Dayton Power and Light Company, hereinafter called the Dayton Company, is that this Court or any Court does not have jurisdiction of the subject matter of the action. It is claimed that Sections 4905.20 and 4905.21 of the Ohio Revised Code, commonly called the Miller Act, are controlling and that the City of Piqua, hereinafter called Piqua, must make an application to the Public Utilities Commission of Ohio for an order.

The Court finds the facts to be as set forth in the stipulations and that the facts thus found are sufficient to support the conclusions herein reached.

The origin of the relationship of Dayton and Piqua is an ordinance of Piqua passed January 29, 1884, marked Ex. A., attached to the stipulations of April 15, 1954, and which reads as follows:

"An Ordinance

"X1144

"Granting the Edison Illuminating Company the right of way for poles and wires through the streets of the City of Piqua.

"Sec. 1. Be it ordained by the City Council of the City of Piqua, that the Piqua Edison Illuminating Company and their successors are hereby granted the right for the purpose of furnishing illuminating light and heat and power to erect their poles and stretch their wires thereon through the streets, alleys, and public ways of said City of Piqua; Provided, and this grant is made on these conditions, that said poles and wires shall be so placed as not to interfere with the ordinary course of travel in said City of Piqua, and that said Company shall promptly repair all damages done to any streets, alleys, public ways, gutters, curb or sidewalks by the erection of said poles.

"Sec. 2. This ordinance shall take effect and be in force in ten days after the first publication thereof. Passed Jan. 29, 1884. W. P. Orr, President; J. H. Hatch, Clerk."

The Dayton Company is the successor of the Edison Illuminating Company.

On January 16, 1933, the City Commission of Piqua passed the following Resolution:

"Be it resolved by the Commission of the City of Piqua, Ohio, three-fourths of all members elected thereto concurring:—

"Section I. That the Director of Law of said City be, and he is hereby authorized and directed to commence such action in the proper court so as to prohibit The Dayton Power and Light Company from occupying public streets, alleys and other public places for Distribution System.

"Section 2. This Resolution shall take effect and be in force from and after its passage."

By the third defense of the Dayton Company it charges that the ordinance of 1884 was invalid for the reason that at that time the State had not granted power to cities to exercise such control over their streets and alleys. This issue was not presented when the Court decided the motion for summary judgment although it was a pertinent issue then as now.

Whether or not a contract existed in 1933 between the parties as a result of this ordinance is important. This Court previously held in a decision, (January

19, 1955) on a motion for summary judgment, that a contract between a city and public utility company entered into before the passage of the Miller Act was not governed by it and that such a contract without a termination date being specified was terminable at will of either party. It was held in East Ohio Gas Co. v. City of Cleveland, 106 Ohio St. 489, 140 N.E. 410, that to apply the Miller Act under such circumstances would impair the obligations of a contract.

The revised Municipal Code of 1878, 75 Ohio Laws, p. 161, gave certain powers to cities and villages and it is claimed by counsel for Piqua that these powers are broad enough to authorize the ordinance of 1884.

This might be persuasive except that the Courts have held that cities and villages had no power to pass such ordinances in 1884.

"Under the Constitution, previous to the amendment in 1912, municipal corporations in their public capacity possessed such powers, and such only, as were expressly granted by statute and such as might be implied as essential to carry into effect those which were expressly granted. Ravenna v. Pennsylvania Co., 45 Ohio St. 118, 12 N.E. 445." Billings v. Cleveland Railway Co., 92 Ohio St. 478, 482, 111 N.E. 155, 156.

"The first enactment touching the power of companies organized for the purpose of supplying electricity for lighting streets, etc., was passed May 12, 1886 (83 O.L., 143), and authorized such companies to construct lines for conducting electricity for power and light purposes through alleys, etc., 'with the consent of the municipal authorities of the city, village or town, and under such reasonable regulations as they may prescribe.' Prior to 1886 there was no statute conferring power on the municipality to grant to an electric light company the right to erect poles." Hardin-Wyandot Lighting Co. v. Village of Upper Sandusky, 93 Ohio St. 428, 438, 113 N.E. 402, 404.

"First, as to the Brush Electric Light Co. The ordinance of the city council, granting to it the right to erect and maintain in the streets, avenues, alleys and public grounds of the city, poles and appurtenances necessary for furnishing light by means of electricity, was passed March 3, 1882. At that time there was not, nor until May 12, 1886, (83 Ohio L. 143) was there any statute of the state, which expressly conferred upon the municipal authorities of a city the right to make such a grant—and we are of the opinion that in no one of the clauses of Section 1692, Revised Statutes, which is the general statute pointing out and enumerating the powers granted to municipal corporations, or by the provisions of Sections 2492, or 2640, to which our attention has been called by counsel for the plaintiffs, is any such power conferred, even by implication. The clear doctrine of the law is, that municipal corporations have such powers only as are expressly conferred by the legislature, 'and those which are necessarily or fairly implied in, or incident to the powers expressly granted, or those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of the power, is resolved by the courts against the corporation, and the power is denied.' 2 Dillon on Municipal Corporations, 4th Ed. 145; 45th Ohio St., 118." Brush Electric Light Co., v. Jones Bros. Electric Light Co., 5 Ohio Cir.Ct.R. 340, 341. See also City of Wellston v. Morgan, 59 Ohio St. 147, 52 N.E. 127 and Toledo Electric Street Railway Company v. Western Electric Light & Power Company, 10 Ohio Cir.Ct.R. 531.

 The Court must conclude that this ordinance was ultra vires Piqua at the time it was passed.

 Did it ripen into a contract through use and mutual consent? In the Wellston case, supra, it was held that where a city attempted to make a 99 year contract which *was not* authorized, it could not be construed as a 10 year contract which *was* authorized. A contract requires a meeting of minds and the Court cannot make a contract for the

parties. Neither can a contract be made by occupancy and lapse of time. Dayton was an occupant at sufferance. Toledo Electric Street R. Company v. Western Electric Light & Power Co., supra.

"A void contract is no contract at all; it binds no one and is a mere nullity. Accordingly, an action cannot be maintained for damages for its breach. It requires no disaffirmance to avoid it and it cannot be validated by ratification. 12 Am.Jur., Contracts, Sec. 10, p. 507."

 Counsel for Piqua argue that Dayton is estopped to deny that there was a contract.

Estoppel has been applied in a number of cases between cities and public utility companies where there was a lack of power in the city to make a contract. In all of these cases that have come to the attention of this Court the matter involved was an acceptance of benefits and a denial of obligations. In most cases a refusal to be bound by rate provisions.

The Court of Appeals for the Sixth Circuit said in Smith v. Price Bros. Co., 131 F.2d 750, at page 754, "On the other hand, under the Ohio precept of the rule, in order to create estoppel by acceptance of benefits, it is essential that the person against whom estoppel is claimed, should have acted with knowledge of the facts and of his rights, and that the party claiming estoppel should have been without knowledge or means of knowledge of the facts on which he based his claim and that he was misled to his prejudice."

Clearly, here both parties had access to the facts and certainly Dayton did nothing to mislead Piqua to its prejudice.

"Equitable estoppel or estoppel in pais is the principal by which a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed." 19 Am.Jur. 634.

"Generally speaking, however, equitable estoppel is a rule of justice which in its proper field prevails over all other rules."

\* \* \* \* \* \*

"The doctrine of estoppel in pais is founded upon principles of morality and fair dealing and is intended to subserve the ends of justice." 19 Am.Jur., 640.

The Court should invoke the rule of estoppel when applicable to prevent an injustice. But what injustice will Piqua suffer if the doctrine of estoppel is not invoked?

By applying the rule of estoppel one is precluded from asserting the truth but estoppel can not create a contract where none existed. If there is no contract no question can arise under the constitutional prohibition against impairing the obligations of a contract. The East Ohio Gas case, supra, cannot be stretched beyond the narrow limits of the principle decided.

The Court takes the position that a valid contract entered into prior to the effective date of the Miller Act would not be governed by the Miller Act because of East Ohio Gas case, supra. If no valid contract existed in 1933, the Miller Act would apply.

The Miller Act is a regulatory measure and was passed under the police power of the State. The theory behind it is that it is for the protection and benefit of the health and welfare of the people. Therefore, the citizens of Piqua have a stake in the controversy and it is not purely a dispute between Piqua as a corporation and the Dayton Company.

The Legislature of Ohio has deemed that the interests of the people can best be served by the application of the sections of the Miller Act above quoted to terminations, abandonments or withdrawals of services of public utilities.

It is the duty of the Court to apply the law of Ohio and not to evade it.

The second paragraph of Section 4905.21 of the Ohio Revised Code reads in part as follows:

"Upon the hearing of said application, the commission shall ascertain the facts and make its findings thereon, and if such facts satisfy the commission that the proposed abandonment, withdrawal, or closing for traffic or service is reasonable, having due regard for the welfare of the public and the cost of operating the service or facility, it may allow such abandonment, withdrawal, or closing; otherwise it shall be denied, or if the facts warrant, the application may be granted in modified form."

The Court can see no injustice to Piqua in the application of this procedure. The Court finds that the doctrine of estoppel is not applicable and that there is no necessity to invoke it.

There being no contract, the Court is of the opinion that the rule would be the same as where a contract had expired and the utility continued to operate. Lake Shore Electric Ry. Co. v. State ex rel. Martin, 125 Ohio St. 81, 180 N.E. 540.

■ The Court concludes that the ordinance of 1884 is void as constituting a contract between Piqua and Dayton and that the sections of the Miller Act above quoted are applicable. Consequently, Piqua must seek its remedy before the Public Utilities Commission and the Amended Complaint will be dismissed.

Having arrived at this conclusion, it is not necessary to consider the other 16 defenses.

The Court considers that the facts and conclusions of law are sufficiently stated herein to comply with Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A.

Counsel for Dayton will prepare an Order and submit it to opposite counsel and to the Court for approval.

On Motion for a New Trial.

This case is before the Court on a motion of the plaintiff for a new trial.

The only question argued by counsel for the plaintiff, either orally or by brief, concerns the application of the doctrine of estoppel. Counsel insist that the Dayton company is estopped to deny that the relationship between the Dayton company and Piqua created by the ordinance of 1884 was not a valid contract.

As a result of this ordinance the predecessor of the Dayton company entered the City of Piqua and installed poles, wires and equipment for the purpose of furnishing electric light and power to the city and its residents. Thereby mutual and reciprocal rights, benefits and obligations were established between the parties. This relationship continued for forty-nine years and each party received its benefits and performed its obligations according to the mutual understanding between them.

It was Piqua, not the Dayton company, that terminated the relationship. On January 16, 1933, Piqua, after establishing its own electric plant, and when it no longer needed the services of the Dayton company, passed a resolution terminating the alleged contract. Piqua then sought by Quo Warranto proceedings to tell the Dayton company that it no longer had any authority to remain in the City of Piqua and that it must take every last pole, wire and piece of equipment and get out.

This is not a case of the Dayton Company quitting and attempting to take with it or keep something such as land or other benefits acquired through the relationship. Piqua had the alleged contract as long as it wanted it and got from it all of the benefits it wanted. If Piqua prevails in its Quo Warranto action the Dayton company goes out with nothing except the salvage value of its equipment and the expense of dismantling it.

The question is a matter of procedure. Shall Quo Warranto apply as would be the case if the ordinance of 1884 created a valid contract? Or shall Piqua seek its remedy before the Public Utilities Commission as is the csae where there is no contract and when the contract was

made after the Miller Act, commonly called, was enacted?

This is purely a legal question and not an equitable one.

The Court should endeavor to apply the law of Ohio and not evade it as was stated in the decision of August 2, 1957.

It is the opinion of the Court that counsel for plaintiff wrongly apply the doctrine of estoppel. The motion for new trial in its entirety, will be overruled.