THE STATE, EX REL. KLAPP, PROSECUTING ATTORNEY, *v.*
DAYTON POWER & LIGHT CO. ET AL.

(No. 314—Decided November 10, 1960.)

*Mr. Richard K. Wilson*, director of law, *Mr. Haveth E. Mau* and *Mr. Robert Houston French*, for relator.

*Mr. Franklin L. Shipman, Mr. Julian de Bruyn Kops* and *Mr. J. R. Newlin*, for respondents.

Kerns, J. This is an action in quo warranto, commenced on March 23, 1933, with the filing of a petition in the Court of Appeals for Miami County, Ohio, by the then prosecuting attorney for that county, Paul T. Klapp. Although the prosecuting attorney is nominally the relator herein, the real party in interest ·is the city of Piqua, Ohio.

The respondent Irving Trust Company was made a party to the action on October 24, 1934, upon motion of Piqua. On December 27, 1934, the action was removed from the Court of Appeals to the United States District Court, Southern District of Ohio, Western Division, upon the motion of respondent Irving Trust Company.

On August 2, 1957, the United States District Court announced its decision, finding that Piqua had no remedy by way of quo warranto and should seek relief from the Public Utilities Commission of Ohio. *State, ex rel. Klapp, Pros. Atty.,* v. *Dayton Power & Light Co.* (1957), 82 Ohio Law Abs., 152.

From this decision Piqua appealed to the United States Court of Appeals, Sixth Circuit, and on January 22, 1959, the Court of Appeals upheld the decision of the District Court and said that Piqua must seek permission or authority for the withdrawal of electric service by the power company from the Public Utilities Commission of Ohio. *State, ex rel. Klapp, Pros. Atty.,* v. *Dayton Power & Light Co.* (1959), 82 Ohio Law Abs., 158, 263 F. (2d), 909.

Piqua then filed a petition for a writ of certiorari with the Supreme Court of the United States. That court, on June 1, 1959, granted the petition and reversed the judgment upon the ground that the cause should not have been removed to the federal court. *Ohio, ex rel. Klapp, Pros. Atty.,* v. *Dayton Power & Light Co.* (1959), 359 U. S., 552.

The case is again before this court. By amended petition, filed on October 23, 1959, the relator seeks an order requiring the respondent The Dayton Power & Light Company to remove its

poles, wires, standards and other equipment and apparatus from the streets, lanes, alleys, commons and other public places in the city of Piqua, Ohio, and to cease rendering electric service to citizens, and other persons, firms and corporations therein.

The respondents demurred to the relator's amended petition on the ground "that it does not state facts which show a cause of action in that said amended petition fails to show that the Public Utilities Commission of Ohio has allowed, required or consented to the abandonment or withdrawal of respondent's, The Dayton Power & Light Company's, electric facilities and the electric service rendered thereby to consumers in the city of Piqua, Ohio, as is required by Sections 4905.20 and 4905.21, Revised Code of Ohio."

The issue thus presented is whether the amended petition is defective in failing to allege that the prior consent and approval of the Public Utilities Commission has been obtained. In other words, is the consent and approval of the Public Utilities Commission to the abandonment or withdrawal of facilities and service a condition precedent to the maintenance of this action?

Although the history of this case discloses that the issue involved herein has been approached from various directions, some of the observations made en route to the instant controversy are worthy of repetition. In the United States District Court (82 Ohio Law Abs., 152, 157), Judge Cecil concluded his opinion with the following language:

"The Miller Act is a regulatory measure and was passed under the police power of the state. The theory behind it is that it is for the protection and benefit of the health and welfare of the people. Therefore, the citizens of Piqua have a stake in the controversy and it is not purely a dispute between Piqua as a corporation and the Dayton company.

"The Legislature of Ohio has deemed that the interests of the people can best be served by the application of the sections of the Miller Act above quoted to terminations, abandonments or withdrawals of services of public utilities.

"It is the duty of the court to apply the law of Ohio and not to evade it.

"The second paragraph of Section 4905.21, Revised Code, reads in part as follows:

" 'Upon the hearing of said application, the commission shall ascertain the facts and make its findings thereon, and if such facts satisfy the commission that the proposed abandonment, withdrawal, or closing for traffic or service is reasonable, having due regard for the welfare of the public and the cost of operating the service or facility, it may allow such abandonment, withdrawal, or closing; otherwise it shall be denied, or if the facts warrant, the application may be granted in modified form.'

"The court can see no injustice to Piqua in the application of this procedure. The court finds that the doctrine of estoppel is not applicable and that there is no necessity to invoke it.

"There being no contract, the court is of the opinion that the rule would be the same as where a contract had expired and the utility continued to operate. *Lake Shore Electric Ry. Co.* v. *State, ex rel. Martin*, 125 Ohio St., 81, 180 N. E., 540.

"The court concludes that the ordinance of 1884 is void as constituting a contract between Piqua and Dayton and that the sections of the Miller Act above quoted are applicable. Consequently, Piqua must seek its remedy before the Public Utilities Commission * * *."

In affirming the judgment of the District Court (82 Ohio Law Abs., 158, 160), the United States Court of Appeals said:

"The conclusion of the District Court that the ordinance of 1884 was invalid is supported by the applicable Ohio law. Ohio cities had no power in 1884 to pass an ordinance bestowing a franchise upon a public utility company for the use of the city streets. *Ravenna* v. *Pennsylvania Company*, 45 Ohio St., 118, 12 N. E., 445; *Billings* v. *Cleveland Railway Company*, 92 Ohio St., 478, 111 N. E., 155. The long use of the streets by defendant and its predecessors did not create a valid contract. Since in 1933 no contract existed between the parties, the Miller Act, Section 4905.21, Revised Code, applies and the city is required to seek from the Public Utilities Commission permission for the proposed withdrawal of service by defendant. Cf. *City of Cincinnati* v. *Public Utilities Commission of Ohio*, 137 Ohio St., 437, 19 O. O., 143, 30 N. E. (2d), 797."

Sections 4905.20 and 4905.21 (referred to as the Miller Act), upon which the respondent relies, provide in part as follows:

Section 4905.20, Revised Code.

"No railroad as defined in Section 4907.02 of the Revised Code, operating any railroad in this state, and *no public utility* as defined in Section 4905.02 of the Revised Code *furnishing service or facilities within this state, shall abandon or be required to abandon or withdraw* any main track or depot of a railroad, or main pipe line, gas line, telegraph line, telephone toll line, electric light line, water line, steam pipe line, or any portion thereof, pumping station, generating plant, power station, or service station of a public utility, or the service rendered thereby, which has once been laid, constructed, opened, and used for public business, nor shall any such facility be closed for traffic or service thereon, therein, or thereover *except as provided in Section 4905.21 of the Revised Code."* (Emphasis ours.)

Section 4905.21, Revised Code.

"Any railroad or any political subdivision desiring to abandon, close, or have abandoned, withdrawn, or closed for traffic or service or of any part of a main track or depot, and *any public utility or political subdivision desiring to abandon or close, or have abandoned, withdrawn, or closed* for traffic or service or of any part of any line, pumping station, generating plant, power station, or service station, referred to in Section 4905.20 of the Revised Code, *shall make application to the Public Utilities Commission in writing."* (Emphasis ours.)

It is apparent, we believe, that these sections anticipate and require a hearing before the Public Utilities Commission before facilities and services are withdrawn or abandoned. And especially is this so in view of the purpose of the enactments which is to protect the public as distinguished from either the political subdivision or the public utility. *City of Cleveland* v. *East Ohio Gas Co.*, 34 Ohio App., 97, appeal dismissed, 121 Ohio St., 628. Furthermore, the *Public Utilities Commission* is specifically given the power and jurisdiction to supervise and regulate public utilities in the state of Ohio. (Sections 4905.04 and 4905.05, Revised Code.) And this jurisdiction has been characterized by the Supreme Court as exclusive. *State, ex rel. Ohio Bell Telephone Co.,* v. *Court of Common Pleas of Cuyahoga County*, 128 Ohio St., 553.

But the relator contends that the power granted to municipalities by Section 4 of Article XVIII of the Constitution of Ohio controls in this case, and argues that Piqua is not subject, therefore, to legislative restriction. That provision, as applicable hereto, provides:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. * * *"

Under this provision, it is obvious that Piqua may operate its own utility. But this fact has no bearing upon the issue involved herein. We are concerned with pre-existing facilities and services furnished to the inhabitants of Piqua by a foreign utility. Under such circumstances, the Miller Act specifically requires a political subdivision to make application to the Public Utilities Commission for authority to require the public utility to withdraw or abandon service. It is a matter of procedure designed to protect the public under the police power of the state, and we fail to observe how this procedure in any way deprives the municipality of its constitutional power either to operate its own utility service or to contract with another utility for such service. The contention advanced by the relator herein was considered in the case of *State, ex rel. Wear, Pros. Atty.,* v. *Cincinnati & Lake Erie Rd. Co.*, 128 Ohio St., 95. The court said, at page 102:

"* * * It is also suggested that to require the consent of the utilities commission before the property and service may be ordered abandoned would contravene the provisions of Article XVIII, Section 4, of the Ohio Constitution, giving municipalities the power to contract in certain particulars. In *East Ohio Gas Co.* v. *City of Cleveland*, 121 Ohio St., 628, 172 N. E., 379, this precise question was before this court. The Court of Appeals had held that Sections 504-2 and 504-3, General Code, were not in contravention of Article XVIII, Section 4, of the Constitution of Ohio, as interfering with the power of municipalities to contract. This court dismissed the petition in error to the judgment of the Court of Appeals for the reason that no debatable constitutional question was involved. See *City of Cleve-*

*land* v. *East Ohio Gas Co.*, 34 Ohio App., 97, 170 N. E., 586. To that ruling we adhere.''

In the case before us, the law, as well as the equities, preponderate in favor of the respondent. No possibility of prejudice to either party is foreseeable from compliance with the Miller Act. And in any event, the action of the Public Utilities Commission is subject to review.

We are, therefore, of the opinion that application must be made to the Public Utilities Commission for authority to abandon the respondent's property and discontinue its service before an order of ouster may be made by this court. The demurrer will be sustained.

*Demurrer sustained.*

WISEMAN, P. J., and CRAWFORD, J., concur.