**TOWN OF BRUCETON, A Municipal Corporation created pursuant to a private act of the State of Tennessee, Plaintiff/Appellee,**

v.

**Gerald ARNOLD, d/b/a Blue Dip Swimming Pool, located in Bruceton, Tennessee, Defendant/Appellant.**

Court of Appeals of Tennessee, Western Section, at Jackson.

May 9, 1991.

Application for Permission to Appeal Denied by Supreme Court Sept. 9, 1991.

Donald E. Parish, of Ivey, Parish & Johns, Huntingdon, for plaintiff/appellee.

Robert T. Keeton, Jr. and Robert T. Keeton III, Huntingdon, for defendant/appellant.

TOMLIN, Presiding Judge (Western Section).

The Town of Bruceton ("Bruceton") filed suit in the Chancery Court of Carroll County against Gerald Arnold, d/b/a Blue Dip Swimming Pool, ("Arnold"). Bruceton sought to permanently enjoin Arnold from using a private well dug on swimming pool property as a source of water for his pool. Following a bench trial, the chancellor found that the well constituted a potential source of contamination for the water supply of Bruceton. Arnold was enjoined from using the well and raises two issues on appeal: (1) whether the chancellor erred in allowing into evidence testimony based upon a handbook entitled "Ground Water," together with certain illustrations prepared by the Environmental Protection Agency; and (2) whether the evidence preponderates against the findings of the chancellor. Bruceton presents as an additional issue whether the chancellor erred in refusing to consider the equitable distribution of the cost of supplying water in a municipality as a factor in support of Bruceton's contention for exclusive control of its water supply. We find no error.

Virtually all, if not all, of the facts are undisputed. Arnold owns and operates a public swimming pool in Bruceton. The pool consumes a large amount of water daily. In 1987, Arnold employed a licensed well digger to drill a well on the pool property in order to supplement his water needs. The Arnold well drew water from the same aquifer used by Bruceton to supply water to its residents. Bruceton brought this action to enjoin Arnold's use of the well, contending that it violated certain town ordinances, and in addition, that the continued operation of the well posed a potential source of contamination to the only source of water available to the residents of Bruceton.

Bruceton's motion for summary judgment was denied by the chancellor. As a result of certain provisions of that order and in light of certain of Bruceton's allegations that were abandoned, the chancellor noted that the only issue presented to the court at trial was whether or not Arnold's private well did or could adversely impact the quality of Bruceton's water.

Following a bench trial, the chancellor entered written findings of fact and conclusions of law. His findings were as follows:

## FACTUAL FINDINGS

1. The defendant operates for a profit a swimming pool within the city limits of the Town of Bruceton, a municipal corporation of the State of Tennessee.

2. In 1987, the defendant employed a licensed and qualified well digger to drill a well for him which was properly installed and otherwise constitutes a legal well. This well is used for the purpose of filling and replenishing the water source for the defendant's swimming pool.

3. The private well is located about 1,860 feet from the nearest of five wells operated by the Town and draws its water source from the same source (acquifier [sic]) as do the wells for the Town.

4. The water source serving the Town is an unconfined source and extends to about 150 feet below the surface. The water source in use by the Town is its only source of water.

5. Kevin Young, an engineer who is retained by the Town to supervise the water and sewer system, gave an opinion, which the Court accepts, that the defendant's private well under private control is a potential source of pollution to the Town's water supply.

## I. THE EVIDENTIARY ISSUES

Bruceton's principal witness was Mr. Kevin Young, who testified that he and his

company had served as consulting engineers since 1983, and that they were responsible for the maintenance and operation of Bruceton's water supply. Young's curriculum vitae revealed that he had a BS degree in civil engineering, a master's degree in sanitary engineering, and that he was licensed as a professional engineer in seven states. It was shown that he was highly qualified in water works and water pollution matters.

■ In one part of his testimony Young utilized and referred to a publication of the Environmental Protection Agency entitled "Ground Water." Young identified it as "a primary reference" information source for engineers studying ground water problems. He referred to it as the "first all-encompassing reference" when beginning research in this area.

In addition, Young utilized a chart from the EPA publication showing how contaminated and abandoned wells might become a conduit of pollution to a city's water supply. The chancellor permitted Young to use the chart in his testimony and to refer to the EPA publication over the objections of Arnold's counsel. In his findings, the chancellor noted that the chart, as an exhibit, "was not received by the court as substantive evidence." As for the EPA manual, the chancellor found that its utilization by Young as part of his testimony was permissible pursuant to Rule 902(5), Tennessee Rules of Evidence. In our opinion, the chancellor did not err in so ruling, and if it was error, it was harmless error. This issue is without merit.

## II. THE PREPONDERANCE OF THE EVIDENCE

■ Inasmuch as this case was tried by the chancellor without the intervention of a jury, our scope of review on appeal is *de novo* upon the record of the trial court, with a presumption that the findings of fact by the trial court are correct. Unless the evidence preponderates against these findings, absent an error of law, we must affirm. T.R.A.P. Rule 13(d). After reviewing the record, we are of the opinion that the evidence does not preponderate against the chancellor's findings.

Bruceton's expert, Kevin Young, testified that he was quite familiar with the underground aquifer from which Bruceton drew its water. He testified that the aquifer was unconfined in size. Stated another way, the Bruceton well field, as well as Arnold's well, tapped an aquifer that was a lake or free pool of water approximately sixty-five feet deep from its surface under the ground to the clay bed that confined it at the bottom. He stated that water in the aquifer could move in any direction. Young further testified that Bruceton obtained its water through five wells, one of which was located in close proximity to Arnold's well.

Young also stated that Bruceton is not in a position to regulate the construction, operation, maintenance, or capping of private wells within the boundaries of the municipality. He stated that private wells such as the one owned by Arnold, an uncontrolled pathway into Bruceton's water supply, could pass numerous contaminates into the aquifer, identified by Young as the sole water supply for the Town of Bruceton.

Young further testified that Bruceton's wells were installed in accordance with established principles and were constructed in accordance with proper plans and specifications. He emphasized that the wells were under the control of the Town of Bruceton, and that if and when one had to be abandoned, it could be done in a proper manner to insure that pollutants would not enter into it and proceed into the aquifer below.

Young noted that Arnold's well was located within fifty to one hundred feet of the right-of-way of U.S. Highway 70. At one point Young stated:

If any form of surface pollution, be it storm water runoff, an underground storage tank that might contain petroleum or other hazardous materials, or the direct pumping of hazardous materials by groups that are referred to as midnight dumpers, or a spill in the area of the Blue Dip well, if any of those occurrences happened, then the Blue Dip well

could serve as that direct conduit into the underground lake or pool of water from which the town draws its water supply and contaminate it directly.

Young also noted that inasmuch as the Arnold well was a private well located on private property, under the then existing set of circumstances, Bruceton had no rights to go upon the property to inspect the well at any time. This issue is also without merit.

In his final decree, the chancellor noted as follows:

The court finds that in balancing the competing interests of the Town and the private well owner, the conflict should be resolved in favor of the Town. As the same water source is used by both the Town and the defendant, the potential loss by the Town and its citizens could be much more devastating than any loss suffered by the defendant.

The Town is therefore entitled to the relief sought and the injunction preventing the defendant's use of the well is granted.

Because of the potential of great and irreparable harm to Bruceton, this Court wishes to make clear the nature of the relief sought and granted so that there will be no confusion. In its complaint, Bruceton requested "that a mandatory injunction be issued against the Defendant or his agents enjoining them from any further use of said well, discharge of water as above set forth and that the well be permanently capped."

In the prayer of its complaint, Bruceton requested "such further and general relief to which it may be entitled." Again, in light of the potential severity of harm, Arnold's well is to be permanently capped in accordance with sound engineering procedures acceptable to Bruceton and its consulting engineers. The costs for capping the well are to be borne equally by the parties. Furthermore, representatives of Bruceton shall have the right, to be exercised at reasonable times, to go upon Arnold's premises in order to ascertain that the well as capped presents no threat to Bruceton's water supply. In the event

Bruceton determines that additional steps must be taken to secure and enclose the capped well so as to protect it from tampering, vandalism, etc., Bruceton may do so at its cost, but in a manner so as not to unduly impose a burden upon Arnold's property.

### III. THE ECONOMIC ISSUE

█ Bruceton contends that the concept of the equitable distribution of costs would be a factor for the court to have considered in reaching its conclusion, and that it was error to have excluded testimony offered on this issue.

From our research, the language quoted by the trial court from *Jones v. Mayor, etc. of Nashville,* 109 Tenn. 550, 72 S.W. 985 (1903) is *dicta.* We can find no strong authority for the position taken by Bruceton. We find no error, and if it was error, it is harmless.

The judgment of the trial court is affirmed in all respects. Costs in this cause are taxed to Arnold, for which execution may issue if necessary. This case is remanded to the Chancery Court of Carroll County for such other proceedings as are necessary, not inconsistent with the provisions of this opinion.

HIGHERS, J., and O'HEARN, Ret., Special Judge, concur.