IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 2000 Session


TENNESSEE-AMERICAN WATER COMPANY v. CITY OF
CHATTANOOGA, TENNESSEE, ET AL.

Direct Appeal from the Chancery Court for Hamilton County
No. 52118      Howell N. Peoples, Chancellor

FILED AGUST 2, 2000

No. E2000-00415-COA-R3-CV


The City of Chattanooga asserted, by counter-claim, that the franchise rights of a state-franchised water company had terminated when the original stated corporate existence of ninety-nine years expired. The Hamilton County Chancery Court found that the water company's franchise was separate from the incorporation, that perpetuity of the franchise is the appropriate interpretation when there exists no limiting language in the franchise grant itself, and that the water company had not trespassed by continuing to operate in Chattanooga past the expiration of the original ninety-nine year grant of corporate existence. The judgment of the Chancellor is affirmed.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**


D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., JJ., joined.

Randall L. Nelson, Fredrick L. Hitchcock, Larry L. Cash, and Stephen D. Barham, Chattanooga, Tennessee, for the appellant, City of Chattanooga, Tennessee.

Joe A. Conner and Misty Smith Kelley, Chattanooga, Tennessee, for the appellee, Tennessee-American Water Company.

OPINION

Background

The Chancellor set out a remarkably detailed factual and procedural background of the events leading to Trial of this case on pages two through thirteen of the Memorandum Opinion

and Order on appeal. We adopt and attach as an addendum pages two through thirteen of the Trial Court's Memorandum Opinion and Order as part of the background section of our Opinion.

A review of the background reveals that the Tennessee legislature granted corporate status to a group of incorporators for the formation of the Chattanooga Water Company in Chapter 91, Section 19 *et seq.* of the 1868 Public Acts of the General Assembly of Tennessee. The purpose of the corporation was to establish a water company to provide service within the city of Chattanooga. The corporation was granted extensive rights relating to provision of water service, including the rights to enter onto private property to install and maintain pipes, tanks, fire hydrants, and related facilities. After that venture failed, the legislature in the 1869 Public Acts recognized another corporation, the Lookout Water Company, and passed to this new entity, ". . . all the rights, powers and privileges granted to, and subject to all the rules, restrictions and penalties imposed upon the Chattanooga Water Company . . .." The parties have stipulated that Plaintiff/Appellee Tennessee-American Water Company ("Plaintiff") succeeded to the rights, privileges, duties, and limitations set forth in the 1868 Act.

The original charter stated a corporate existence of ninety-nine years, and Plaintiff amended its charter in 1940 to provide for a perpetual corporate existence. This grant of franchise from the state of Tennessee provides Plaintiff's principal claim of right to operate as a water company. Defendant/Appellant City of Chattanooga ("Defendant") never granted a specific franchise to Plaintiff to operate within the corporate boundaries of Defendant, although certain agreements, permits, ordinances, and the course of conduct of the parties are consistent with recognition of the rights established in the 1868 Act. Certain disputes arose between Plaintiff and Defendant during the 1970s when Defendant, according to the Chancellor, ". . . embarked on an aggressive annexation program," part of which included efforts to acquire Plaintiff. In 1976 and 1977, Defendant, by ordinance, granted limited water service franchises to Southern Cellulose Products and Dixie Yarns. Plaintiff objected to these franchises, asserting exclusive right to provide water service within the City of Chattanooga. Plaintiff filed suit in July 1977, naming as parties defendant the City of Chattanooga and the two companies granted water service franchises by the City. Defendant City of Chattanooga filed an Answer and Counter-claim, averring in the Counter-claim ". . . that the original charter of the plaintiff . . . expired on March 10, 1967, and was never validly amended to enlarge its corporate existence . . .." This Counter-claim was based upon the ninety-nine year life of the original corporation, and asserted claims for damages arising from Plaintiff's trespass since March 10, 1967.

Following motions for summary judgment, the Trial Court dismissed the Complaint, finding that Plaintiff had a non-exclusive franchise to provide water service in Chattanooga, but left open the issue raised in Defendant's Counter-claim. Following other procedural events not relevant to the issues on appeal, Defendant's Counter-claim was tried in May, 1981, but no decision was filed for reasons not apparent from the record. In March, 1999, Plaintiff filed to re-open the case. Claims against the other original defendants to the Complaint were dismissed with prejudice, and trial on the Counter-claim was held during August, 1999. On October 11, 1999, the Trial Court filed a Memorandum Opinion and Order, finding that the franchise arising from the 1868 Act is perpetual and did not expire in 1967, dismissing Defendant's Counter-claim for trespass as well as the original

Complaint. There is no dispute concerning the non-exclusive nature of Plaintiff's franchise. It is from the October 11, 1999 Order of the Chancellor that Defendant appeals.

## Discussion

Neither party suggests a standard for our review of the Order of the Chancery Court, moving directly into argument of the issues presented on appeal. The issues as presented by Defendant are:

1. Whether the Chancery Court misconstrued the State-granted franchise held by Plaintiff-Appellee when the Court found it to be a perpetual grant instead of a grant for the time of the originally-granted corporate succession?

2. If the Chancery Court's construction correctly concluded that Plaintiff-Appellee's franchise constituted a vested, perpetual property right, whether the Chancery Court's construction of the franchise is correct to include all of present day Chattanooga instead of Chattanooga as it existed at the time the interest vested?

This case was tried by the Chancellor sitting without a jury, making our scope of review on appeal *de novo* upon the record below. This review is undertaken with a presumption that the findings of fact by the Chancellor are correct, unless the evidence in the record preponderates against such findings. T.R.A.P. Rule 13(d); *Town of Bruceton v. Arnold*, 818 S.W.2d 347, 349 (Tenn. Ct. App. 1991).

Defendant's argument that Plaintiff's franchise ended when ninety-nine years had passed centers upon the contention that the grant of corporate existence with a stated corporate life of ninety-nine years placed an absolute limit on the franchise to operate as a water company in Chattanooga granted by the Tennessee Legislature. The Chancellor, in a thorough analysis of relevant statutes and cases, found that language contained in the 1868 Act allowed for the rights granted in the franchise to be assigned to the successor corporation. The language at issue reads:

Be it further enacted, That Thomas J. Carlile, Robert R. Byard, R.E. McEwen, their associates and successors be, and they are hereby, incorporated a body corporate and politic, under the name and style of the "Chattanooga Water Company;" and by that name and style, shall have succession for ninety-nine years . . ..

1868 Public Acts of the General Assembly of Tennessee, Chapter 91, Section 19.

In finding a perpetual grant, the Chancellor rejected Defendant's argument that the franchise grant lacked the "magic words" necessary to create the authority to assign the rights granted. While, under the common law, the lack of the term "successors and assigns" created a mere life estate in property, the Chancellor is correct that the law applicable at the time of the franchise at issue eliminated such drafting precision in favor of an approach that applies the intention of the parties to grants of property rights. The Chancellor cited T.C.A. § 66-5-101 and its predecessors,

along with supporting citations, in finding that the grant of franchise was perpetual rather than limited to the stated ninety-nine year life of the corporation itself. The current version of the statute reads:

> Every grant or devise of real estate, or any interest therein, shall pass all the estate or interest of the grantor or devisor, unless the intent to pass a less estate or interest shall appear by express terms, or be necessarily implied in the terms of the instrument.
>
> T.C.A. § 66-5-101.

In response, Defendant asserts that the statute only applies to transfers of title in fee simple, and is not applicable in the present case as no property right was conveyed by the Legislature in the franchise grant. The Opinion of the Trial Court cites as authority and discusses the applicability of *City of Chattanooga v. Tennessee Electric Power Co.*, 112 S.W.2d 385 (Tenn. 1938). "A right of way upon a public street, whether granted by act of the legislature, or ordinance of city council, or in any other valid mode, is an easement, and as such is a property right, capable of assignment, sale, and mortgage, and entitled to all the constitutional protection afforded other property rights and contracts." *Id.* at 390. Among the extensive rights granted in the 1868 Act, although in more arcane language, is the right to condemn property for necessary easements. The Chancellor reasoned that the franchise property rights granted Plaintiff's predecessors in sections 24 and 25 of the 1868 Act contained no limiting language, and that the ninety-nine year existence applied only to the original stated corporation existence. We agree.

The Chancellor quoted a learned treatise for the proposition that the intention behind establishing a franchise such as the one at issue is to create a perpetual franchise.

> According to a number of cases, the grant of a franchise to a public utility company is a grant of a property right in perpetuity unless limited in duration by the grant itself, or as a consequence of some limitation imposed by the general law of the state, or by the powers of the subordinate agency making the grant.
>
> 36 Am.Jur.2d, Franchises, § 44.

The Chancellor further cites *City of Chattanooga v. Tennessee Electric Power Co.* as authority for the finding of a perpetual grant.

> The grant of a franchise to a public utility company is, according to the weight of authority, a grant of a property right in perpetuity, unless limited in duration by the grant itself, or as a consequence of some limitation imposed by the general law of the state, or by the corporate powers of the municipality making the grant. If there be authority to make the grant, and it contains no limitation or qualification as to duration, the plainest principles of justice and right demand that it shall not be cut down, in the absence of some controlling principle of public policy. This conclusion finds support from a consideration of the public and permanent character of the

-4-

business utility companies conduct, and the large investment which is generally contemplated.

*City of Chattanooga v. Tennessee Elec. Power Co.*, 112 S.W.2d 385 at 389-390.

Defendant cites no persuasive authority to establish error in the legal reasoning set forth in the Chancellor's Opinion, and we find no support for Defendant's argument on appeal that the franchise itself, and not just the original corporate existence, was limited to ninety-nine years.

It is obvious from the action of the Legislature in 1869 that the rights granted in the 1868 Act were assignable. The Legislature assigned the rights to the new corporation, Lookout Water Company. This assignment was stated as being ". . . with all the rights, powers and privileges granted to, and subject to all the rules, restrictions and penalties imposed upon the Chattanooga Water Company by Act of the General Assembly . . ." 1869 Public Acts of the General Assembly of Tennessee, Chapter 51, Section 12. We note that the ninety-nine year existence is not recited in the 1869 Act, and is argued on appeal as one of the "restrictions and penalties" referenced by the Legislature. This interpretation is strained at best, and certainly does not indicate legislative intent to limit the franchise to the ninety-nine year existence granted the original corporation in the 1868 Act. Defendant does not accept the Chancellor's position that the creation of the corporation, with a stated life of ninety-nine years, is separate from the grant of the franchise, which, through assignment as previously discussed, passed from the original incorporators listed in the 1868 Act, to the incorporators listed in the 1869 Act, and subsequently to the present Plaintiff whose charter was amended in 1940 to provide for perpetual existence in place of the previous ninety-nine year existence.

Defendant cites as authority opinions of the United States Supreme Court,[1] which are distinguished as dealing with issues not on point to the present appeal. We agree with the Chancellor that, as noted in the Opinion on appeal, the Tennessee Supreme Court quoted with approval from another opinion of the United States Supreme Court in declaring perpetuity of a utility franchise to be the logical approach.

A leading case on this subject is *Louisville v. Cumberland Teleph. & Teleg. Co.*, 224 U.S. 649, 32 S.Ct. 572, 576, 56 L.Ed. 934, wherein it appears that the telephone company was operating in the City of Louisville under a franchise granted to its predecessors, which authorized the use of the streets of the city for the purpose of operating telephone lines thereon, and which was without limit as to duration. The contention was made that the original grant of street rights, having been indefinite

---

[1] *Turnpike Co. v. Illinois*, 96 U.S. 63, 24 L.Ed. 651 (1877)(where a franchise limited to the construction and maintenance of one specific toll road was not assignable); *Owensboro v. Cumberland Telephone and Telegraph Co.*, 230 U.S. 58, 33 S.Ct. 988, 57 L.Ed. 1389 (1912)(discussing the common law "magic words" requirement previously discussed as inapplicable under T.C.A. § 66-5-101); *Blair v. Chicago*, 201 U.S. 400, 26 S.Ct. 427, 50 L.Ed. 801 (1906)(where the Illinois legislature had passed legislation requiring acquiescence by local authorities to extending franchise rights beyond the original state grant).

as to time, was either void ab initio, or revocable at the will of the general council, or that it expired in 1893 when Louisville was made a city of the first class, with new and enlarged power. In the course of the opinion the court said:

> In considering the duration of such a franchise it is necessary to consider that a telephone system cannot be operated without the use of poles, conduits, wires, and fixtures. These structures are permanent in their nature and require a large investment for their erection and construction. To say that the right to maintain these appliances was only a license, which could be revoked at will, would operate to nullify the charter itself, and thus defeat the state's purpose to secure a telephone system for public use. For, manifestly, no one would have been willing to incur the heavy expense of installing these necessary and costly fixtures if they were removable at will of the city, and the utility and value of the entire plant be thereby destroyed. Such a construction of the charter cannot be supported, either from a practical or technical standpoint.

> This grant was not at will, nor for years, nor for the life of the city. Neither was it made terminable upon the happening of a future event; but it was a necessary and integral part of the other franchises conferred upon the company, all of which were perpetual, and none of which could be exercised without this essential right to use the streets.

*City of Chattanooga v. Tennessee Elec. Power Co.*, 112 S.W.2d at 391.

We agree with the Chancellor that, as the franchise grant itself had no limiting language as to the duration of the rights granted, the original ninety-nine year limit on the existence of the corporation does not convert the franchise from the presumption of perpetuity for such utility franchises to one of limited duration that ended in 1967.

As for Defendant's second issue, Plaintiff responds that the limitation of Plaintiff's franchise to the 1868 boundaries of Chattanooga was not raised before the Chancellor at trial, and it cannot be raised on appeal.

> It is well-settled that issues not raised at trial may not be raised for the first time on appeal. *Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147, 153 (Tenn.1991); *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn.1983).

> *Chadwell v. Knox County*, 980 S.W.2d 378, 384 (Tenn. Ct. App. 1998)(quoting *State v. Defriece*, 937 S.W.2d 954 (Tenn. Ct. App.1996); *Cf.*, *State v. Lewis*, 958 S.W.2d 736, 738 (Tenn. 1997)(where an issue regarding double jeopardy in a criminal case was not raised at trial, the Court nevertheless addressed the issue "in order to correct an error of constitutional dimension and to prevent manifest injustice").

Defendant responds that the issue was raised at trial "by implication."  The record does not support Defendant's position.  Even under the approach taken by the Court in *State v. Lewis*, Defendant alleges neither error of constitutional dimension nor manifest injustice in this appeal. We agree with Plaintiff that Defendant's second issue was not raised at trial, and may not be raised for the first time on appeal.

### Conclusion

The Order of the Trial Court is affirmed, and this case is remanded for such further proceedings as may be required, if any, consistent with this Opinion.  Costs of this appeal are assessed to the appellant, City of Chattanooga.

_____
D. MICHAEL SWINEY, JUDGE